**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JEFFREY PARKER, individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BARCLAYS BANK DELAWARE,**<br><br>**Defendant.** | **Case No. 2:25-cv-02217-GJP** |

**BARCLAYS BANK DELAWARE'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Defendant Barclays Bank Delaware ("Barclays") hereby moves to dismiss the Class Action Complaint, filed by Jeffrey Parker ("Plaintiff") individually and on behalf of all others similarly situated.

For the reasons stated more fully below, Plaintiff fails to allege facts sufficient to establish that Barclays is subject to the jurisdiction of this Court or that he has any viable claim for relief. The Court should dismiss all of Plaintiff's claims with prejudice.

Respectfully submitted,

Dated: June 9, 2025

_ */s/ Gregory P. Szewczyk*

**BALLARD SPAHR LLP**
Terence Grugan
Gregory P. Szewczyk (*pro hac vice*)
J. Matthew Thornton (*pro hac vice* application submitted)
Alexia C. Chapman (*pro hac vice* application submitted)
1735 Market Street, 51st Floor
Philadelphia, PA 19103
T: (215) 864-8320
F: (215) 864-8999

*Counsel for Defendant*
*Barclays Bank Delaware*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JEFFREY PARKER, individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BARCLAYS BANK DELAWARE,**<br><br>**Defendant.** | **Case No. 2:25-cv-02217-GJP** |

**BARCLAYS BANK DELAWARE'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS**
**PLAINTIFF'S CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ........ 1
FACTUAL BACKGROUND ........ 2
LEGAL STANDARD ........ 3
ARGUMENT ........ 4

I. The Court Lacks Personal Jurisdiction over Barclays. ........ 4
  A. Plaintiff Has Not Alleged Facts Sufficient to Support General Jurisdiction. ........ 4
  B. Plaintiff Has Not Alleged Facts Sufficient to Support Specific Jurisdiction. ........ 5
    1. Plaintiff's Allegations Fail to Establish a Strong Relationship among Barclays, the Forum, and the Litigation, as Required to Satisfy the Traditional Test ........ 5
    2. Plaintiff's Allegations Likewise Fail to Satisfy the Calder Effects Test ........ 6

II. Plaintiff's Negligence Claims Fail. ........ 7
  A. Plaintiff Has Not Alleged Facts Sufficient to Establish Barclays Owed Him Any Legal Duty of Care. ........ 8
    1. Barclays Did Not Owe A Common Law Duty to Plaintiff. ........ 8
    2. Barclays Did Not Have a "Special Relationship" With Plaintiff Sufficient to Give Rise to A Legal Duty. ........ 9
    3. Plaintiff Cannot Circumvent His Burden of Pleading A Duty By Making Conclusory Allegations that Barclays Violated The FTC Act and GLBA. ........ 10
  B. Plaintiff Has Not Shown Barclays Caused the Alleged Harm. ........ 12
  C. Plaintiff Has Not Alleged Cognizable Damages. ........ 13

III. Plaintiff's Unjust Enrichment Claim Fails. ........ 14

IV. Plaintiff's Breach of Confidence Claim Fails. ........ 15

V. Plaintiff Fails to State a Claim Under WESCA. ........ 16
  A. Plaintiff Cannot Allege the Adobe Pixel Intercepted the "Content" of His Communications. ........ 17
  B. Plaintiff Consented to the Interception Under WESCA. ........ 18

VI. Plaintiff Fails to State a Claim Under UTPCPL. ........ 20
  A. Plaintiff Cannot Establish Justifiable Reliance. ........ 20
  B. Plaintiff Has Not Adequately Pled Ascertainable Loss. ........ 21

VII. Plaintiff Fails to State a Claim Under the Multistate Unfair Deceptive Trade Practices Acts. ........ 21

A. Plaintiff Does Not Have Standing to Assert A Claim Under The Multistate Trade Statutes. ........ 22

B. Plaintiff Does Not Allege Damages as Required Under the Multitstate Trade Statutes. 24

CONCLUSION ........ 25

# TABLE OF AUTHORITIES

**Cases** **Page No.**


*Adkins v. Sogliuzzo*,
625 F. App'x 565 (3d Cir. 2015) ....9

*Althaus v. Cohen*,
756 A.2d 1166 (Pa. 2000) ....9

*Arthur J Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022) ....15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....4, 13

*Barletti v. Connexin Software, Inc.*,
No. 2:22-cv-04676-JDW, 2023 WL 6065884 (E.D. Pa. Aug. 17, 2023) ....7, 15, 16

*Basement Sols., LLC v. Wells Fargo Bank, NA*,
No. 21-cv-204, 2021 WL 352012 (E.D. Pa. Feb. 2, 2021) ....15, 16

*Beaver Valley Power Co. v. National Engineering & Contracting Co.*,
883 F.2d 1210 (3d Cir. 1989) ....10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....4, 13

*Brezenski v. World Truck Transfer, Inc.*,
755 A.2d 36 (Pa. Super. 2000) ....9

*Brisbine v. Outside In School of Experiential Educ., Inc.*,
799 A.2d 89 (Pa. Super. 2002) ....9

*Bucci v. Wachovia Bank*,
591 F. Supp. 2d 773 (E.D. Pa. 2008) ....16

*Clemens v. ExecuPharm, Inc.*,
678 F. Supp. 3d 629 (E.D. Pa. 2023) ....3, 4

*Clemens v. ExecuPharm, Inc.*,
No. 20-cv-3383, 2024 WL 199554 (E.D. Pa. Jan. 18, 2024) ....15

*Commerce Bank/PA v. First Union Nat'l Bank*,
911 A.2d 133, 138 (Pa. Super. 2006) ....8

*Commonwealth v. Byrd*,
235 A.3d 311 (Pa. 2020) ....18

*Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc.*,
992 F. Supp. 709 (D.N.J. 1998) ....23

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) ....................17

*Culbreth v. Lawrence J. Miller, Inc.*,
477 A.2d 491 (Pa. Super. 1984) ....................12

*Doe v. Post Acute Med., LLC*,
No. 1:24-CV-547, 2025 WL 511069 (M.D. Pa. Feb. 14, 2025)....................13, 14

*Dunmire v. Morgan Stanley DW, Inc.*,
475 F.3d 956 (8th Cir. 2007) ....................12

*Durst v. Milroy General Contracting, Inc.*,
52 A.3d 357 (Pa. Super. 2012) ....................14

*EMC Corp. v. Pure Storage, Inc.*,
No. 13-cv-12789, 2016 WL 7826662, (D. Mass. Aug. 19, 2016)....................23

*Fragale v. Wells Fargo Bank, N.A.*,
480 F. Supp. 3d 653 (E.D. Pa. 2020)....................8, 9

*Fraiser v. Stanley Black & Decker, Inc.*,
109 F. Supp. 3d 498 (D. Conn. 2015) ....................24

*Fulton Bank, N.A. v. UBS Sec., Inc.*,
No. 10-cv-1093, 2011 WL 52386376 (E.D. Pa. Nov. 7, 2011)....................15

*Goodrich v. E.F. Hutton Grp., Inc.*,
542 A.2d 1200 (Del. Ch. 1988) ....................22

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ....................4

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
98 N.Y.2d 314 (2002)....................23

*Hasson v. FullStory, Inc.*,
114 F.4th 181 (9th Cir. 2024)....................4, 5, 6, 7

*Hepp v. Facebook*,
14 F.4th 204 (3d Cir. 2021) ....................5

*Humphries v. Pennsylvania State University*,
No. 4:20-cv-00064, 2021 WL 4355352 (M.D. Pa. Sep. 24, 2021)....................10

*Hunt v. U.S. Tobacco Co.*,
583 F.3d 217 (3d Cir. 2008) ....................20

*IMO Indus., Inc. v. Kiekert AG*,
155 F.3d 254, (3d Cir. 1998) ....................4, 6

*Ingrao v. AddShopers, Inc.*,
No. 24-cv-4892514, 2024 WL 4892514 (E.D. Pa. Nov. 25, 2024) ....................................... 6, 7, 17, 18

*In re Actiq Sales and Marketing Practices Litig.*,
307 F.R.D. 150 (E.D. Pa. 2015) ....................................... 14

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
No. 3:20-MN-02972-JMC, 2021 WL 3568394 (D.S.C. Aug. 12, 2021) ....................................... 23

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ....................................... 17

*In re NCB Management Services*,
748 F.Supp. 3d 262 (E.D. Pa. 2024) ....................................... 11

*In re Nickelodeon Consumer Priv. Litig.*,
No. 12-cv-07829, 2014 WL 3012873 (D.N.J. July 2, 2014) ....................................... 17

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
355 F. Supp. 3d 145 (E.D.N.Y. 2018) ....................................... 24

*In re Rutter's Inc. Data Sec. Breach Litig.*,
511 F. Supp. 3d 514 (M.D. Pa. 2021) ....................................... 2, 3, 13, 20, 21

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................................... 17

*Insulet Corp. v. EOFlow Co.*,
755 F. Supp. 3d 70 (D. Mass. 2024) ....................................... 23

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945) ....................................... 4

*Langdon v. Google, Inc.*,
474 F. Supp. 2d 622 (D. Del. 2007) ....................................... 22

*Metro. Enter. Corp. v. United Techs. Int'l, Corp.*,
No. 3:03CV1685, 2004 WL 1497545 (D. Conn. June 28, 2004) ....................................... 24

*Miller v. NextGen Healthcare, Inc.*,
742 F. Supp. 3d 1304 (N.D. Ga. 2024) ....................................... 23

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
No. 22-CV-4674, 2023 WL 7017734 (E.D. Pa. Oct. 10, 2023) ....................................... 12, 13

*Pan American World Airways v. United States*,
371 U.S. 296 (1963) ....................................... 11, 12

*Perkins v. Goodyear Tire and Rubber Co.*,
No. 22-cv-1521, 2025 WL 81568 (W.D. Pa. Jan. 13, 2025) ....................................... 6

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) .......... 17, 18, 19

*Reid v. Zurich Mortg. Sols.*,
No. 07-cv-4497, 2009 WL 10684903 (E.D. Pa. Nov. 12, 2009) .......... 16

*Rider v. Uphold HQ Inc.*,
No. 22-cv-1602, 2023 WL 2163208 (S.D.N.Y. Feb. 22, 2023) .......... 11

*Riviello v. Chase Bank USA, N.A.*,
No. 3:19-cv-510, 2020 WL 1129956 (M.D. Pa. Mar. 4, 2020) .......... 20, 21

*Santoro v. Tower Health*,
No. 22-cv-4580, 2024 WL 1773371 (E.D. Pa. Apr. 24, 2024) .......... 12

*Schemberg v. Smicherko*,
85 A.3d 1071 (Pa. Super. 2014) .......... 10

*Shamnoski v.PG Energy*,
858 A.2d 589 (Pa. 2004) .......... 10, 11

*Shooter Pops LLC v. Wells Fargo Bank, N.A.*,
649 F. Supp. 3d 62 (E.D. Pa. 2023) .......... 8, 9

*Smart v. Main Line Health*,
No. 22-cv-5239, 2024 WL 2943760 (E.D. Pa. June 10, 2024) .......... 12

*Stainton v. Tarantino*,
637 F.Supp. 105 (E.D. Pa. 1986) .......... 16

*Sterling Suffolk Racecourse Ltd. P'ship v. Burrillville Racing Ass'n, Inc.*,
802 F. Supp. 662 (D.R.I. 1992) .......... 22, 23

*Talbert v. Am. Water Works Co.*, Inc.,
538 F. Supp. 3d 471 (E.D. Pa. 2021) .......... 23

*Teamsters Loc. 237 Welfare Fund v. AstraZeneca Pharms. LP*,
136 A.3d 688 (Del. 2016) .......... 24, 25

*Toy v. Metro. Life Ins. Co.*,
928 A.2d 186 (Pa. 2007) .......... 20

*Turner v. Avco Corp*,
No. 24-cv-000715-TJS, 2024 WL 3362936 (E.D. Pa. July 9, 2024) .......... 19

*Vorchheimer v. Philadelphian Owners Assoc.*,
903 F.3d 100 (3d Cir. 2018) .......... 20

*Wagner v. Anzon, Inc.*,
684 A.2d 570 (Pa. Super. 1996) .......... 10, 11

*Walkup v. Santander Bank, N.A.*,
147 F. Supp. 3d 349 (E.D. Pa. 2015)....................21

*Weinberg v. Sun Co., Inc.*,
565 Pa. 612 (2001)....................21

*Wisniski v. Brown & Brown Ins. Co.*,
906 A.2d 571 (Pa. Super. Ct. 2006)....................8

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980)....................4

*Yenchi v. Ameriprise Fin., Inc.*,
161 A.3d 811 (Pa. 2017)....................16

*Yocca v. Pittsburgh Steelers Sports, Inc.*,
578 Pa. 479 (2004)....................20

**Statutes** **Page No.**

15 U.S.C. § 45....................11

18 PA. CONS. STAT. § 5702....................17

18 PA. CONS. STAT. § 5704(4)....................18

18 PA. CONS. STAT. § 5725(a)....................17

Conn. Gen. Stat. § 42-110g....................24

DEL. CODE ANN. tit. 6, § 2525....................22

MASS. GEN. LAWS ch. 93A, § 9(1)....................24

MASS GEN. LAWS ch 93A, § 11....................22

N.J. STAT. ANN. § 56:8-19....................24

N.Y. GEN. BUS. LAW § 349(h)....................24

VT. STAT. ANN. tit. 9, § 2451a....................24

VT. STAT. ANN. tit. 9, § 2461....................24

**Other Authority** **Page No.**

RESTATEMENT (SECOND) OF TORTS §§ 316–19....................9

## PRELIMINARY STATEMENT

Plaintiff brings this lawsuit based on Barclays's use of a widely adopted website analytics and advertising tool provided by a third-party vendor, Adobe, on www.barclaycardus.com (the "Website"). According to the Complaint, the tool transmitted to Adobe: (1) "unique identifiers" purportedly capable of identifying Website users; (2) URLs of the specific webpages the Website users visited; and (3) certain unspecified "click events" reflecting users' Website interactions.

Plaintiff claims that upon visiting the Website his "personally identifiable financial information" was transmitted to Adobe. However, he fails to allege with specificity what information the Website purportedly transmitted to Adobe. Indeed, Plaintiff alleges only that Barclays transmitted generic information disclosing which pages of the Website he visited—he does not allege that Barclays transmitted the substantive information Plaintiff input into a credit card application or the outcome of his application.

Plaintiff nevertheless asserts a patchwork of common law and statutory claims against Barclays, including negligence, negligence *per se*, unjust enrichment, and breach of confidence, as well as violations of Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("WESCA"), the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), and consumer protection laws of states with which he has no connection.

As a preliminary matter, the Complaint should be dismissed for lack of personal jurisdiction pursuant to Rule 12(b)(2). Under binding Third Circuit precedent, Barclays is not subject to general jurisdiction, and Plaintiff has not alleged facts to support specific jurisdiction.

Even if jurisdiction existed, dismissal of Plaintiff's claims would still be warranted under Rule 12(b)(6). Plaintiff fails to allege multiple required elements of his negligence, breach of confidence, and unjust enrichment claims, and his statutory claims fare no better: the WESCA claim fails because Plaintiff does not allege the "contents" of his communications were

intercepted, and he admits he consented to the exact disclosure about which he now complains; the UTPCPL claim fails for lack of justifiable reliance and damages; and, lastly, Plaintiff lacks standing to assert claims under other states' laws and, in any event, has failed to allege the requisite harm.

For these reasons, and those set forth more fully below, the Court should dismiss the Complaint in its entirety, with prejudice.

## FACTUAL BACKGROUND[1]

Barclays operates the Website, which consumers can use to apply for and receive credit cards or other financial products, among other things. Compl. ¶ 2. The Website uses Adobe's analytics and advertising tool, called "Adobe Pixel." *Id.* ¶¶ 7, 12. Plaintiff alleges that Adobe Pixel enables Adobe to collect: (1) "unique identifiers" purportedly capable of identifying Website users; (2) URLs of the specific webpages the Website users visited; and (3) certain unspecified "click events" reflecting users' interactions with the Website. *Id.* ¶¶ 7, 14, 21. Plaintiff does ***not*** allege that Adobe's tracking technology enables Adobe to collect Website users' names, addresses, telephone numbers, social security numbers, whether or not users are approved or denied for credit, or any information inputted into a credit application. Adobe allegedly uses the limited information it does collect from the Website "to create custom audiences for Barclays to use" and for "marketing and advertising purposes." *Id*. ¶¶ 3, 5.

In the Complaint, Plaintiff incorporates by reference the GLBA "Privacy Notice," which is accessible through the "Credit Card" hyperlink found in Barclays's Online Privacy Policy. *Id.* ¶¶ 23–24; *see also* Chapman Decl., Exhs. 1 ("2023 Policy") and 2 ("2025 Policy"); *see also In re*

[1] For purposes of this motion only, Barclays accepts as true all of Plaintiff's non-conclusory allegations in the Complaint.

*Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp. 3d 514, 521 (M.D. Pa. 2021) (noting that a court evaluating a motion to dismiss may consider "matters incorporated by reference").

The Privacy Policy reflects Barclays's practices relating to cookies, pixels, and targeted advertising:

> We use cookies, pixel tags, or web beacons and other tracking technologies (collectively, cookies) to collect information which may relate to you, your preferences, or your device. Types of cookies we use are:
>
>> Sharing data for targeted advertising: which may be set through our site by our advertising partners. They may be used by those companies to build a profile of your interests and show you relevant advertising on other sites. If you do not allow these cookies you will experience less targeted advertising.

2025 Policy, at p. 4. *See also* 2023 Policy, at p. 5. The Privacy Policy further states:

> Our partners may place or recognize a cookie on your computer, device, or directly in our emails/communications, and we may share personal information with them if you have submitted such information to us, such as your . . . or device ID. Our partners may link the nonpersonal information we share with them to the cookie stored on your browser or your device . . . Our partners use this information to recognize you across different channels and platforms over time for advertising.

2025 Policy, at p. 5; *see also* 2023 Policy, at p. 5. The Privacy Policy also notifies users how to opt out of any targeted advertising they might see, both on the Website and on third-party websites. *See* 2025 Policy, at p. 5; 2023 Policy, at p. 5.

Plaintiff is a citizen and resident of Pennsylvania. *Id.* ¶ 11. At some unspecified time in the past three years, Plaintiff alleges he applied for a credit card through the Website, and he further alleges his application was denied. *Id.* Plaintiff does not allege that he has ever been a Barclays account or credit card holder or that he ever had access to "Barclays [sic] web portal." *See id.* ¶ 2.

## <u>**LEGAL STANDARD**</u>

"To avoid dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to state a claim that is facially 'plausible.'"

*Clemens v. ExecuPharm, Inc.*, 678 F. Supp. 3d 629, 634–35 (E.D. Pa. 2023) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To meet this standard, Plaintiff's allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.*; *Iqbal*, 556 U.S. at 678; *see also Clemens*, 678 F. Supp. 3d at 635.

## ARGUMENT

### I. The Court Lacks Personal Jurisdiction over Barclays.

"[T]he plaintiff bears the burden of proving that personal jurisdiction is proper." *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 257 (3d Cir. 1998). In assessing personal jurisdiction, a district court must consider the law of the state in which the district court sits and the federal Constitution's Due Process requirements. *Id.* at 259. Because Pennsylvania's long-arm statute is coextensive with the federal Due Process limitations on personal jurisdiction, the court's jurisdictional analysis merges into one: Whether, consistent with due process, a non-consenting, out-of-state defendant has "minimum contacts" with the forum "such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Hasson v. FullStory, Inc.*, 114 F.4th 181, 186 (9th Cir. 2024) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

There are two types of jurisdiction: general and specific. *See, e.g.*, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923–24 (2011). Both are lacking here.

#### A. Plaintiff Has Not Alleged Facts Sufficient to Support General Jurisdiction.

General jurisdiction exists only "when the [party's] affiliations with the State in which suit is brought are "so 'continuous and systematic' as to render them essentially at home in the forum State." *Id*. at 919 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).

Plaintiff does not appear to dispute that the Court lacks general jurisdiction over Barclays. Plaintiff acknowledges that Barclays was formed in and maintains its principal place of business in Delaware, *see* Compl. ¶ 10, and he does not allege that Barclays engaged in continuous and systematic contacts that would render it "at home" in Pennsylvania.

**B. Plaintiff Has Not Alleged Facts Sufficient to Support Specific Jurisdiction.**

The Supreme Court has articulated two tests for assessing whether specific personal jurisdiction exists: (1) the "traditional test," and (2) the *Calder* "effects" test. *See, e.g.*, *Hasson v. FullStory, Inc.*, 114 F.4th at 186. In this case, Plaintiff's allegations do not give rise to specific jurisdiction under either test.

1. *Plaintiff's Allegations Fail to Establish a Strong Relationship among Barclays, the Forum, and the Litigation, as Required to Satisfy the Traditional Test.*

To satisfy the traditional test, a plaintiff must plead facts sufficient to establish that (1) the defendant has "minimum contacts" with the forum such that it "purposefully avail[ed] itself of the privilege of conducting activities within the forum," and (2) there is "a strong relationship among the defendant, the forum, and the litigation." *Id.*; *see also Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021).

In privacy cases stemming from a plaintiff's use of a defendant's website, the Third Circuit has observed that the connection between the defendant, the forum, and the litigation is generally "too weak" to support a finding of jurisdiction under the traditional test. *See Hepp*, 14 F.4th at 208. That observation held strong in *Hasson*, a case in which the Third Circuit applied the traditional test and held the district court lacked personal jurisdiction over Papa Johns, despite Papa Johns having significant contacts with Pennsylvania and even incorporating onto its website technology that enabled website visitors "to order food from nearby stores including in Pennsylvania." 114 F.4th at 194 (cleaned up). Indeed, even with multiple physical locations and allegations about Papa

John's locally-based advertising, the Third Circuit found no personal jurisdiction with respect to claims related to website tracking. *Id.*

In this case, Plaintiff claims personal jurisdiction exists because he is a Pennsylvania resident and accessed the Website from Pennsylvania. Compl. ¶ 9. These bare-bone allegations establish an even weaker connection between the defendant, the forum, and the litigation than the one alleged in *Hasson*. Under binding Third Circuit precedent, Plaintiff's allegations fail to establish that Barclays is subject to personal jurisdiction under the traditional test.

2. *Plaintiff's Allegations Likewise Fail to Satisfy the Calder Effects Test.*

The *Calder* "effects" test requires a plaintiff to plead facts establishing that "the defendant expressly aimed his tortious conduct at the forum." *Hasson*, 114 F.4th at 187; *Perkins v. Goodyear Tire and Rubber Co.*, No. 22-cv-1521, 2025 WL 81568, at *3 (W.D. Pa. Jan. 13, 2025). "To satisfy the express aiming prong, the plaintiff must do the following: (1) 'show that the defendant ***knew*** that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum,' and (2) 'point to the specific activity indicating that the defendant ***expressly aimed*** its tortious conduct at the forum.'" *Ingrao v. AddShopers, Inc.*, No. 24-cv-4892514, 2024 WL 4892514, at *9 (E.D. Pa. Nov. 25, 2024) (emphasis in original) (quoting *IMO Indus.,* 155 F.2d at 266).

In *Hasson*, the Third Circuit held that, in addition to failing to satisfy the traditional test, the plaintiff could not satisfy the *Calder* effects test because he did not allege that defendant Papa Johns "expressly aimed" the website code at Pennsylvania. 114 F.4th at 190. The court, "like several sister courts, [] held that a defendant does not expressly target a forum merely by operating a website that is accessible there—even when the plaintiff alleges harm in that forum arising out of his engagement with that website." *Id.*; *accord Perkins*, 2025 WL 81568, at *4–5 (holding that plaintiff failed to satisfy the *Calder* effects test because there were no allegations that Goodyear expressly aimed its conduct at Pennsylvania; the plaintiff "failed to allege, for example, that

Goodyear's website is accessible only in Pennsylvania; that the Session Replay Code is deployed only to users who access the site in Pennsylvania; or that the content of Goodyear's website is tailored in any meaningful way to Pennsylvanians"); *Ingrao*, 2024 WL 4892514, at *10 (finding that the plaintiff failed to establish express aiming at the Pennsylvania forum despite "orchestrating a scheme with thousands of retailers, many of which are alleged to be Pennsylvania companies, to (1) intercept and collect information that consumers shared with those retailers; and (2) use that collection of information to send unwanted emails to the devices of those consumers" (internal quotations omitted)).

Here, Plaintiff has alleged no facts that would support finding that Barclays aimed its conduct at Pennsylvania in a manner sufficient to satisfy the *Calder* effects test. He does not allege that Barclays deployed Adobe Pixel on its Website only to users who access the site in Pennsylvania or that the content of the Website is tailored in any meaningful way to Pennsylvanians. Nor has Plaintiff alleged that Barclays knew that he would suffer the brunt of any purportedly tortious conduct in Pennsylvania. It is settled Third Circuit law that merely being a Pennsylvania resident and visiting a website while in the State, which is all that Plaintiff alleges here, *see* Compl. ¶ 9, fails to satisfy the express aiming element of the *Calder* effects test. *Hasson*, 114 F. 4th at 191–92; *Ingrao*, 2024 WL 4892514, at *14–15.

## <u>II. Plaintiff's Negligence Claims Fail.</u>

Plaintiff asserts claims against Barclays for negligence and negligence *per se*. Compl. ¶¶ 40–60. Pennsylvania law does not recognize an independent cause of action for negligence *per se*. *See Barletti v. Connexin Software, Inc.*, No. 2:22-cv-04676-JDW, 2023 WL 6065884, at *1 (E.D. Pa. Aug. 17, 2023) ("[N]egligence *per se* is not an independent cause of action, it's an evidentiary presumption that, if established, constitutes proof of a breach of duty." (internal citation omitted)). Plaintiff's negligence *per se* claim must be dismissed.

To state a claim for negligence under Pennsylvania law, a plaintiff "must show that the defendant had a duty to conform to a certain standard of conduct; that the defendant breached that duty; that such breach caused the injury in question; and actual loss or damage." *Shooter Pops LLC v. Wells Fargo Bank, N.A.*, 649 F. Supp. 3d 62, 68 (E.D. Pa. 2023) (quoting *Wisniski v. Brown & Brown Ins. Co.*, 906 A.2d 571, 575–76 (Pa. Super. Ct. 2006)) (internal quotation omitted). Here, Plaintiff has failed to allege facts sufficient to establish that either: (1) Barclays owed him, a noncustomer, any legal duty of care; or (2) Barclays's alleged breach of any such duty caused Plaintiff to suffer legally cognizable damages. Thus, Plaintiff's negligence claim fails.

**A. Plaintiff Has Not Alleged Facts Sufficient to Establish Barclays Owed Him Any Legal Duty of Care.**

In support his negligence claim, Plaintiff alleges that Barclays had a duty to keep his "nonpublic personal information, including personally identifiable financial information, confidential." Compl. ¶ 42. Significantly, Plaintiff does not allege he is a customer. Instead, Plaintiff suggests this duty arose from one of three possible sources: common law, a "special relationship" between him and Barclays, or the FTC Act and/or GLBA. *See* Compl. ¶¶ 42–43, 45–46, 55. No such duty exists under any of these sources.

1. *Barclays Did Not Owe A Common Law Duty to Plaintiff.*

As a general matter, "banks do not owe any duty of care to noncustomers and/or third parties." *Shooter Pops*, 649 F. Supp. 3d at 68*; Fragale v. Wells Fargo Bank, N.A.,* 480 F. Supp. 3d 653, 661 (E.D. Pa. 2020) ("[D]ecisions across the country, including within Pennsylvania, have held that banks do not owe any duty of care to noncustomers and/or third parties."); *see also Commerce Bank/PA v. First Union Nat'l Bank*, 911 A.2d 133, 138–41 (Pa. Super. 2006) (holding that a bank's duty depends on the relationship between the parties at the relevant time).

Accordingly, contrary to Plaintiff's conclusory assertion otherwise, banks—like Barclays—do not owe general duties to non-customers—like Plaintiff—under Pennsylvania common law.

2. *Barclays Did Not Have a "Special Relationship" With Plaintiff Sufficient to Give Rise to A Legal Duty.*

"Absent a special relationship, courts will typically bar claims of non-customers against banks." *Adkins v. Sogliuzzo*, 625 F. App'x 565, 569 (3d Cir. 2015) (affirming dismissal of negligence claim based on lack of duty). Under Pennsylvania common law, a special relationship arises only in two circumstances. First, when the relationship is among those enumerated in Sections 316–319 of the Restatement (Second) of Torts—which is not present here. *Brisbine v. Outside In School of Experiential Educ., Inc.*, 799 A.2d 89, 93 (Pa. Super. 2002) (citing *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 40 (Pa. Super. 2000); RESTATEMENT (SECOND) OF TORTS §§ 316–19). And second, when the factors set forth in *Althaus v. Cohen* "favorably predominate" in favor of imposing a previously-unrecognized duty. 756 A.2d 1166 (Pa. 2000); *see Fragale*, 480 F. Supp. 3d at 660–69 (evaluating the *Althaus* factors and declining to impose a duty of reasonable care between a financial institution and noncustomer).

Here, Plaintiff's allegations hardly establish any relationship with Barclays, let alone the "special" one he alleges they shared. *See* Compl. ¶ 44. Plaintiff merely claims he "applied for a credit card through Barclays' website" and "[h]is credit card application was denied." *Id.* ¶ 11. Plaintiff has similarly failed to identify any unique circumstances that would give rise to a "special relationship" between him and Barclays outside of those that may have arisen had he actually become a Barclays customer. *See Shooter Pops*, 649 F. Supp. 3d at 68 (finding that the plaintiff, who had no contractual relationship with Wells Fargo, "fail[ed] to plead that Wells Fargo otherwise had some special relationship to it that would create a duty").

Further, even if Pennsylvania courts were to recognize a special relationship between credit card applicants and banks, any duty of confidentiality arising from that relationship would apply only to Barclays's handling of the sensitive information the applicant provided to the bank—not general website impression data, which is what Plaintiff alleged Barclays had a duty to keep confidential here. *See* Compl. ¶¶ 7, 14, 21. *See also Humphries v. Pennsylvania State University*, No. 4:20-cv-00064, 2021 WL 4355352, at *14 (M.D. Pa. Sep. 24, 2021) (holding that scope of duty created by a special relationship is limited to the context of that special relationship).

Because Plaintiff has failed to allege a special relationship between him and Barclays that is sufficient under the law to impose upon Barclays a duty to keep his generic Website viewing data confidential, his negligence claim should be dismissed.

3. *Plaintiff Cannot Circumvent His Burden of Pleading A Duty By Making Conclusory Allegations that Barclays Violated The FTC Act and GLBA.*

Presumably recognizing that, as a non-customer, he would not be able to establish the existence of a viable legal duty under the common law or based on a special relationship between himself and Barclays, Plaintiff attempts to invoke the negligence *per se* doctrine as a shortcut.

Negligence *per se* is "conduct, whether of action or omission, which may be declared and treated as negligence without any argument or proof as to the particular surrounding circumstances," *Wagner v. Anzon, Inc.*, 684 A.2d 570, 574 (Pa. Super. 1996) (citations omitted), and it is often predicated on the violation of a statute or ordinance, *Schemberg v. Smicherko*, 85 A.3d 1071, 1074 (Pa. Super. 2014). Plaintiff cannot rely on the doctrine for two primary reasons.

First, not every statute can be used to claim negligence *per se*. Courts do not permit negligence *per se* to be used when the statute or regulation that was allegedly breached fails to delineate specific conduct from which a violation can be clearly ascertained. *See Shamnoski v.PG Energy*, 858 A.2d 589, 601 (Pa. 2004) (for negligence *per se* to apply, "the statute at issue would

have to be so specific as to leave little question that a person or entity found in violation of it deviated from a reasonable standard of care"). For example, a statute that speaks in general terms of "reasonableness" will not suffice because it is no more specific than the law of negligence in general. In contrast, a statute that describes specific acts that should or should not be done may support such a claim. *See id.* at 601–02; *see also Beaver Valley Power Co. v. National Engineering & Contracting Co.*, 883 F.2d 1210 (3d Cir. 1989).

Additionally, "a court will not use a statute or regulation as the basis of negligence *per se* where the purpose of the statute is to 'secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public.'" *Wagner*, 684 A.2d at 627. "[T]he absence of a private cause of action in a statutory scheme is an indicator that the statute did not contemplate enforcement for individual harms." *Id.* Federal courts routinely reject negligence *per se* claims where the underlying statute contains no private right of action because allowing a claim would create a de facto private right of action. *See, e.g.*, *Rider v. Uphold HQ Inc.*, No. 22-cv-1602, 2023 WL 2163208, at *7 (S.D.N.Y. Feb. 22, 2023) ("[A] decision to allow such a claim would effectively afford a private right of action that the statute does not recognize—contravening the legislative scheme.").

In this case, Plaintiff alleges that Barclays had a duty "to keep the nonpublic personal information, including personally identifiable financial information, confidential . . . under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair. . . practices in or affecting commerce," as well as "under the GLBA." Compl. ¶¶ 45–46, 53–55. As courts have recognized in similar contexts, these allegations do not support a finding of negligence *per se*—or a duty for negligence claims—because the cited statutes are "insufficiently specific to

describe conduct from which a violation can be ascertained." *In re NCB Management Services*, 748 F.Supp. 3d 262, 281–82 (E.D. Pa. 2024).

Moreover, the FTC Act and GLBA are both intended to protect the public generally. *See Wagner*, 684 A.2d at 627; *Pan American World Airways v. United States*, 371 U.S. 296, 306 (1963) ("[T]he Federal Trade Commission Act… do[es] not embrace a remedy for private wrongs but only a means of vindicating the public interest."). Neither act provides a private right of action. *See Culbreth v. Lawrence J. Miller, Inc.*, 477 A.2d 491, 501 (Pa. Super. 1984) ("It is well-established . . . that there is no private cause of action for violations of the Federal Trade Commission Act."); *Dunmire v. Morgan Stanley DW, Inc.*, 475 F.3d 956, 960 (8th Cir. 2007) (no private right of action under GLBA).

Because the FTC Act and GLBA are neither sufficiently specific with respect to their prescribed duty of care, nor intended to protect the rights of individuals over those of the public generally, Plaintiff cannot rely on either statute to establish the duty (or breach) element of his negligence claim against Barclays.

**B. Plaintiff Has Not Shown Barclays Caused the Alleged Harm.**

To establish the causation element of his negligence claim, Plaintiff must at a minimum "identify the specific individually-identifiable [financial] information searched for on Defendant's website and the consequences of those searches[.]" *Smart v. Main Line Health*, No. 22-cv-5239, 2024 WL 2943760, at *4 (E.D. Pa. June 10, 2024); *see also Santoro v. Tower Health*, No. 22-cv-4580, 2024 WL 1773371, *6 (E.D. Pa. Apr. 24, 2024) ("[W]ithout specific allegations about what information plaintiffs searched on the website (and the consequences of those searches), plaintiffs have not adequately plead[ed] causation."); *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, No. 22-CV-4674, 2023 WL 7017734 (E.D. Pa. Oct. 10, 2023) (dismissing plaintiff's claim for failing to allege "the content, timing, or number of the alleged communications").

Here, Plaintiff fails to allege with specificity what information ***of his*** the Website purportedly transmitted to Barclays. This is particularly problematic because Plaintiff—a noncustomer—bases his negligence claims on generic allegations that the Website "systematically disclosed Defendant's ***customers*** [sic] nonpublic personal information" to Adobe. Compl. ¶ 48 (emphasis added).

Even if Plaintiff had alleged the specific information the Website purportedly transmitted, his allegations would still fall short of establishing causation. Plaintiff alleges that at some unspecified time "[a]fter [he] applied" for a Barclays credit card, he "noticed targeted advertising from Barclays related to financial products and services." Compl. ¶ 11. However, because Plaintiff does not allege when within the three year period he purportedly applied for a credit card or saw the alleged ads, his allegations "offer no details about . . . the content, timing, or number of the alleged communications[,]" and thus they are "no more than 'naked assertion[s] devoid of further factual enhancement." *Murphy*, 2023 WL 7017734, at *5 (quoting *Iqbal*, 556 U.S. at 678–79).

**C. Plaintiff Has Not Alleged Cognizable Damages.**

"Plaintiffs must articulate their harm or actual loss with more precision to 'nudge' their negligence claim 'across the line from conceivable to plausible.'" *Id.* at *5 (citing *Twombly*, 550 U.S. at 570). Courts have held that it is not enough for a plaintiff to merely allege as damages that he has experienced "shame, embarrassment, and emotional distress," loss of "time and money," or "increased risk of future harm" as a result of the defendant's actions, unless the complaint "contains facts" to support such "conclusory" allegations. *Id.* at *18. For example, if a plaintiff alleges financial damages, he must explain what the defendant's actions cost him, in terms of lost wages or otherwise. *See In re Rutter's Data Sec. Breach Litig.*, 511 F. Supp. 3d at 541.

As other federal courts in the Third Circuit have held, allegations that the disclosure of personal information has resulted in the receipt of targeted advertising, without more, is

insufficient to plead damages. *See Doe v. Post Acute Med., LLC*, No. 1:24-CV-547, 2025 WL 511069, at *7 (M.D. Pa. Feb. 14, 2025) (dismissing claim for negligence premised on website's use of cookies including the Meta Pixel because the only damages alleged were that " [the plaintiff] 'now receives targeted health-related advertisements reflecting private medical treatment information, including those related to skin conditions, arthritis, geriatric medical conditions, as well as for clinical trials, and physicians'").

Plaintiff's allegation that he "noticed" targeted advertisements does not come close to the harm required to state a negligence claim. Plaintiff alleges no other damages resulting from the disclosure—he does not allege that he experienced any stress, embarrassment, or anxiety as a result of the purported dissemination of his personal information, that he lost any time or money, or even that he was mildly inconvenienced. Thus, his negligence claim fails.

## **III. Plaintiff's Unjust Enrichment Claim Fails.**

As an initial matter, Pennsylvania "bar[s] an equitable remedy for unjust enrichment when a party has an adequate remedy at law." *See In re Actiq Sales and Marketing Practices Litig.*, 307 F.R.D. 150, 165 n.24 (E.D. Pa. 2015). Here, Plaintiff's statutory and unjust enrichment claims against Barclays seek the same relief for the same alleged conduct. Because Plaintiff has established he has an adequate remedy at law, his unjust enrichment claim should be dismissed

Plaintiff's unjust enrichment claim independently fails because he does not allege facts sufficient to establish that "benefits [were] conferred on defendant by plaintiff" or the "appreciation of such benefits by defendant." *Durst v. Milroy General Contracting, Inc.*, 52 A.3d 357 (Pa. Super. 2012). Conclusory allegations that the Plaintiff "conferred a benefit" on the Barclays are not enough. *Post Acute*, 2025 WL 511069, at *9.

Here, Plaintiff alleges that Barclays "benefitted by its collection and improper disclosure of the nonpublic personal information . . . pertaining to Plaintiff . . . and by its ability to retain, use,

and profit from that information." Compl. ¶ 63. Conclusory assertions aside, Plaintiff does not allege ***how*** Barclays purportedly benefitted from this information. Plaintiff does not allege that Barclays sold any information it collected concerning his Website activity. Nor can he allege that any information Barclays collected about him has independent monetary value. *See, e.g.*, *Arthur J Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 592 (N.D. Ill. 2022) ("Courts have, however, routinely rejected the 'proposition that an individual's personal identifying information has an independent monetary value.'" (collecting cases)). Finally, to the extent Plaintiff claims that Barclays benefitted from Adobe's interception of Plaintiff's information, he has failed to plead facts sufficient to establish a "direct" link between Adobe's alleged interception and the benefit Barclays purportedly received as a result. *See Barletti*, 2023 WL 6065884, at *3 ("[W]ithout some direct tracing of the money, funding a business that pays another business is not enough to constitute the conferral of a benefit."). Accordingly, Plaintiff's unjust enrichment claim fails.

## IV. Plaintiff's Breach of Confidence Claim Fails.

Breach of confidence involves "the unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship." *Clemens v. ExecuPharm, Inc.*, No. 20-cv-3383, 2024 WL 199554, at *4 (E.D. Pa. Jan. 18, 2024). In determining whether a confidential relationship exists, "the critical question is whether the relationship goes beyond mere reliance on superior skill, and into a relationship characterized by overmastering influence on one side or weakness, dependence, or trust, justifiably reposed on the other side." *Id.* (quoting *Fulton Bank, N.A. v. UBS Sec., Inc.*, No. 10-cv-1093, 2011 WL 52386376, at *14 (E.D. Pa. Nov. 7, 2011)).

Pennsylvania courts only recognize breach of confidence claims for banking customers in instances where the allegations establish that the parties' relationship goes beyond the typical "bank/customer relationship" and gives rise to "a fiduciary one." *Basement Sols., LLC v. Wells*

*Fargo Bank, NA*, No. 21-cv-204, 2021 WL 352012, at *4 (E.D. Pa. Feb. 2, 2021) (noting also that "banks, as a general matter, do not owe fiduciary duties to [their] customers unless the bank has 'substantial control' over the [customer's] affairs." (citing *Bucci v. Wachovia Bank*, 591 F. Supp. 2d 773, 783 (E.D. Pa. 2008)).

To establish the existence of a fiduciary relationship, a plaintiff must allege more than "mere reliance on superior skill," but also that the "relationship [is] characterized by 'overmastering influence' through which the relying party cedes decision-making control." *Barletti*, 2023 WL 6065884, at *2 (citing *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 823 (Pa. 2017)); *Basement Sols., LLC*, 2021 WL 352012, at *4. Courts have also explained that, in the context of financial institutions, the "bare assertion" that a defendant is "privy to [the plaintiff's] personal and financial information" is insufficient to establish a fiduciary (or confidential) relationship. *Reid v. Zurich Mortg. Sols.*, No. 07-cv-4497, 2009 WL 10684903, at *4 (E.D. Pa. Nov. 12, 2009). Even alleging that the defendant "provid[ed] accounting services and confidential financial advice" is, without more, insufficient to allege such a relationship. *Stainton v. Tarantino*, 637 F.Supp. 1051, 1066 (E.D. Pa. 1986).

In this case, Plaintiff has failed to allege either a "special relationship" with Barclays or a "confidential" one. To start, Plaintiff is not a Barclays customer. Even if he were, he has not alleged facts sufficient to support the existence of a fiduciary or confidential relationship between him and Barclays. Additionally, the information Plaintiff alleges was intercepted—URLs and mouse clicks—is not the sensitive and private financial information that any "confidential relationship" plausibly existed to protect. Accordingly, Plaintiff's breach of confidence claim fails.

## V. Plaintiff Fails to State a Claim Under WESCA.

Plaintiff's WESCA claim fails for at least two reasons: (A) Plaintiff has not alleged that Adobe intercepted the "contents" of his communications with the Website; and (B) Plaintiff had

actual knowledge of the Website's Privacy Policy, which disclosed that it may use the at-issue tracking technologies.

### A. Plaintiff Cannot Allege the Adobe Pixel Intercepted the "Content" of His Communications.

WESCA prohibits the "interception" of "electronic communications." *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 125 (3d Cir. 2022) (quoting 18 PA. CONS. STAT. § 5725(a)); *Ingrao*, 2024 WL 4892514, at *14. The statute defines "interception" as the "[a]ural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device." 18 PA. CONS. STAT. § 5702. It defines "contents" as "any information concerning the substance, purport, or meaning of that communication." *Id.*

Courts have interpreted "contents" to include "the intended message conveyed by the communication, [which] does not include record information regarding the characteristics of the message that is generated in the course of the communication." *Ingrao*, 2024 WL 4892514, at *14 (quoting *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (interpreting the Federal Wiretap Act)). Website tracking data is not "contents" and thus not actionable. *See Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 70 (W.D. Pa. 2023) (holding that interception of plaintiff's "mouse movements and clicks, keystrokes, and URLs of web pages visited" did not constitute "contents" of communications under WESCA); *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 137 (3d Cir. 2015); *In re Nickelodeon Consumer Priv. Litig.*, No. 12-cv-07829, 2014 WL 3012873, at *15 (D.N.J. July 2, 2014) (IP and email addresses are not "contents" under the federal Wiretap Act, but rather are record information because "URLs . . . have less in common with the spoken words of a telephone call than they do with the telephone number dialed to initiate the call"). Such information is "the cyber analog to record information

[the defendant's partners] could have obtained through a security camera at a brick-and-mortar store." *Ingrao*, 2024 WL 4892514, at *14 (citing *Cook*, 689 F. Supp. 3d at 70).

Here, Plaintiff has not alleged facts sufficient to establish that Adobe Pixel collected the "contents" of any communications with the Website. He does not allege that he "searched for any specific information" or that he "provided any personal information" when he visited the website. *Id.* at *13–14. At ***most***, Plaintiff alleges that Adobe Pixel collected his webpage views, "clicks," and "interact[ions]" with the Website, Compl. ¶ 21, which courts in this Circuit have held fall short of satisfying WESCA's "content" requirement. *See Ingrao*, 2024 WL 4892514, at *13–14.

Plaintiff also cannot bootstrap the tracking technology's hypothetical capabilities to save his WESCA claim where, as here, he does not allege that Adobe Pixel actually collected "data such as [his] gender, interests, housing type, location, promotion affinity, spending power, and more." *See id.* at *14 (holding that "it is not enough for [a plaintiff] to allege the potential capabilities of the [tracking code]," and the plaintiff instead "need[s] to allege that [the code's users], in fact, harnessed the capabilities [the plaintiff] describes, and it had the result of capturing the contents of specific communications").

Because Plaintiff has failed to show that Barclays enabled Adobe to intercept the "contents" of his communications, Plaintiff's WESCA claim fails.

### B. Plaintiff Consented to the Interception Under WESCA.

Plaintiff's claim independently fails under WESCA's consent exception. *See* 18 PA. CONS. STAT. § 5704(4). As the Third Circuit has recently observed, establishing consent in this context does not require that all parties to the communication have "actual knowledge" of the interception. *Popa*, 52 F.4th at 132. Rather, prior consent "can be demonstrated when the person being recorded knew or should have known[] that the conversation was being recorded." *Id.* (quoting

*Commonwealth v. Byrd*, 235 A.3d 311, 319 (Pa. 2020)). The standard "is one of a reasonable person, and not proof of the subjective knowledge of the person being recorded." *Id.*

Here, Plaintiff expressly references and relies upon the content of Barclays's GLBA Privacy Notice, which is a part of and supplemented by its Privacy Policy. Compl. ¶¶ 23–24, 79, 104–09; *see also Turner v. Avco Corp*, No. 24-cv-000715-TJS, 2024 WL 3362936, at *2 (E.D. Pa. July 9, 2024) ("In deciding a motion to dismiss, courts generally consider . . . documents incorporated by reference in the complaint[.]"). The Privacy Policy repeatedly provides clear and conspicuous notice of this exact type of collection, including that the Website uses "cookies, pixel tabs, or web beacons," that it "shar[es] data for targeted advertising[,] which may be set through our site by our advertising partners [and that t]hey may be used by those companies to build a profile of your interests to show you relevant advertising on other sites," and that "[o]ur partners may place or recognize a cookie on your computer, device, or directly in our emails/communications, and we may share personal information with them if you have submitted such information to us, such as your name, postal address, email address, or device ID." The Privacy Policy further made clear that "[b]y providing Personal Information to us through the Services, you agree to this Online Privacy Policy."

As a matter of law, this notice was sufficient to alert Plaintiff that the Website incorporated tracking technologies that may collect and transmit certain personal information to third-party vendors like Adobe. *See Popa v. Harriet Carter Gifts, Inc.*, No. 2:19-CV-450, 2025 WL 896938, at *8 (W.D. Pa. Mar. 24, 2025) (holding the privacy statement on the defendant's website "provide[d] sufficient information to alert a reasonably prudent visitor to the . . . website of the critical issue for a WESCA claim—that third parties . . . may collect data relating to the visitor's conduct on the website"). By proceeding to use the Website in light of the Privacy Policy

disclosures, Plaintiff consented to the interception of information for which he now complains, thereby defeating his WESCA claim.

## <u>VI. Plaintiff Fails to State a Claim Under UTPCPL.</u>

To succeed on a UTPCPL claim, a plaintiff must demonstrate that he or she (A) justifiably relied on the defendant's actions, and (B) suffered damages as a result. *In re Rutter's Inc. Data Sec. Litig.*, 511 F. Supp. 3d at 541. Here, Plaintiff fails to establish both elements of the claim.

### A. Plaintiff Cannot Establish Justifiable Reliance.

To state a viable UTPCPL claim, Plaintiff must allege "justifiable reliance" in his complaint. *Riviello v. Chase Bank USA, N.A.*, No. 3:19-cv-510, 2020 WL 1129956 at *4 (M.D. Pa. Mar. 4, 2020); *accord Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 202 (Pa. 2007); *Hunt v. U.S. Tobacco Co.*, 583 F.3d 217, 227 (3d Cir. 2008) (rejecting a presumption of reliance). Specifically, Plaintiff must plead facts to support the conclusion that his reliance on Barclays's alleged conduct—here, Barclays's purported assurances about its use of Plaintiff's information—was justifiable. *Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 501–02 (2004).

Conclusory allegations of reliance on privacy-based promises are insufficient as a matter of law. *See Rutter's Data Security Breach Litigation*, 511 F. Supp. 3d at 542 (dismissing UTPCPL claim premised on "a single conclusory allegation that 'Plaintiffs relied on Rutter's misrepresentations and omissions relating to its data privacy and security'").

Here, Plaintiff alleges that Barclay's Privacy Notice contained "misrepresentations, concealments, omissions, and suppressions of material facts" that "had a tendency or capacity to mislead and create a false impression in consumers' minds." Compl. ¶ 107. His allegations are not only conclusory, but are also contradicted by the actual language of the Privacy Policy, which explicitly provide that Barclays may share with its business partners the exact type of information that Plaintiff alleges Barclays shared with Adobe. *See Vorchheimer v. Philadelphian Owners*

*Assoc.*, 903 F.3d 100, 112 (3d Cir. 2018) (noting that when factual allegations contradict the plain language of documents relied on the complaint, the plain language of the document controls). Plaintiff has thus failed to allege that he justifiably relied on any misrepresentation, because Barclays made none. His UTPCPL claim fails.

**B. Plaintiff Has Not Adequately Pled Ascertainable Loss.**

The UTPCPL "clearly requires, in a private action, that a plaintiff suffer an ascertainable loss as a result of the defendant's prohibited action." *Weinberg v. Sun Co., Inc.*, 565 Pa. 612, 618 (2001). To allege an ascertainable loss, the plaintiff "must be able to point to money or property that he would have had but for the defendant's fraudulent actions." *In re Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp. 3d at 541 (citing *Riviello*, 2020 WL 1129956, at *3). Allegations of shame, embarrassment, or emotional distress are not cognizable under the UTPCPL. *Id.* (citing *Walkup v. Santander Bank, N.A.*, 147 F. Supp. 3d 349, 358 (E.D. Pa. 2015)).

In this case, Plaintiff sets forth only conclusory allegations of damages. *See* Compl. ¶¶ 110–11. His Complaint contains no facts to support those conclusions or any other "ascertainable loss" of money or property. Thus, the Court should dismiss Plaintiff's UTPCPL claim.

## VII. Plaintiff Fails to State a Claim Under the Multistate Unfair Deceptive Trade Practices Acts.

Despite residing in and purportedly using the Website while in Pennsylvania, Plaintiff asserts deceptive trade practices claims under the laws of Connecticut, Delaware, Massachusetts, New Jersey, New York, and Vermont (collectively, the "Multistate Trade Statutes"). *See* Compl. ¶¶ 113–18.

As an initial matter, Plaintiff has not sufficiently alleged that Barclays engaged in any deceptive acts. Barclays's Privacy Policy, which Plaintiff admits to having read, expressly and accurately disclosed the actions about which Plaintiff complains—specifically, Barclays's use of

tracking technologies on its Website. Thus, Barclays did not engage in any act or deceptive practice sufficient to support Plaintiff's Multistate Trade Statutes claim.

In any event, Plaintiff's claim under the Multistate Trade Statutes independently fails for at least two additional reasons: (A) Plaintiff lacks standing to bring such claims; and (b) Plaintiff has not adequately alleged damages.

### A. Plaintiff Does Not Have Standing to Assert A Claim Under The Multistate Trade Statutes.

To assert a claim under each of the Multistate Trade Statutes, Plaintiff must have standing. The standing requirement varies statute to statute, but one thing is constant: Plaintiff lacks standing to sue under all of them.

**Delaware Consumer Fraud Act**. The DCFA applies only to "unfair or deceptive merchandising practices in the conduct of any trade or commerce in part or wholly within this State." *Goodrich v. E.F. Hutton Grp., Inc.*, 542 A.2d 1200, 1202 (Del. Ch. 1988) (quoting 6 Del.C. § 2512); *see also Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 633–34 (D. Del. 2007) (dismissing DCFA claim for failing to allege deceptive "acts took place in Delaware"). Additionally, a private right of action under the DCFA may only be brought in a "court of competent jurisdiction in this State [Delaware] . . . ." DEL. CODE ANN. tit. 6, § 2525. Plaintiff does not plausibly allege that any of the conduct giving rise to his DCFA claim occurred in Delaware, and even if he had so alleged, he very clearly has not brought his action in the proper forum.

**Massachusetts Consumer Protection Act**. The MCPA states that "[n]o action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth." MASS GEN. LAWS ch 93A, § 11. Plaintiff does not allege that any of the conduct at issue occurred in Massachusetts at all, let alone "primarily and

substantially," and thus, his MCPA claim must be dismissed. *See Sterling Suffolk Racecourse Ltd. P'ship v. Burrillville Racing Ass'n, Inc.*, 802 F. Supp. 662, 672–73 (D.R.I. 1992), *aff'd*, 989 F.2d 1266 (1st Cir. 1993) (dismissing MCPA claim because "actions complained of did not occur 'primarily and substantially' within Massachusetts"); *Insulet Corp. v. EOFlow Co.*, 755 F. Supp. 3d 70, 97 (D. Mass. 2024) (granting motion to dismiss MCPA claim because, "[e]ven reading the record in the light most favorable to [plaintiff]," defendants' alleged wrongful conduct did not occur primarily and substantially in Massachusetts" (quoting *EMC Corp. v. Pure Storage, Inc.*, No. 13-cv-12789, 2016 WL 7826662, at *2 (D. Mass. Aug. 19, 2016))).

**New York General Business Law**. Section 349 of the NYGBL applies only to "the deception of a consumer [that] occur[s] in New York." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 325 (2002). Plaintiff does not allege that he was deceived in New York and thus does not have standing to assert a NYGBL claim against Barclays.

**New Jersey Consumer Fraud Act**. "It is well-settled law that one must be a 'consumer' in order to sue under [the NJCFA]." *Miller v. NextGen Healthcare, Inc.*, 742 F. Supp. 3d 1304, 1332 (N.D. Ga. 2024) (quoting *Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc.*, 992 F. Supp. 709, 716 (D.N.J. 1998)). "A plaintiff does not qualify as a 'consumer' if they do not purchase a product for consumption." *Id.* (quoting *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JMC, 2021 WL 3568394, at *11 (D.S.C. Aug. 12, 2021). Additionally, to state a NJCFA claim, a plaintiff must allege facts sufficient to establish some connection between the claim and New Jersey. *See, e.g.*, *Talbert v. Am. Water Works Co.*, Inc., 538 F. Supp. 3d 471, 489 (E.D. Pa. 2021) (dismissing NJCFA claim because the plaintiff was "a Pennsylvania resident whose claims bear no relationship to New Jersey").

Here, Plaintiff alleges neither that he purchased a product from Barclays nor that there is a plausible connection between his claim and New Jersey. Accordingly, his NJCFA claim fails.

**Vermont Consumer Fraud Act**. The VCFA provides a private right of action only to "consumers." VT. STAT. ANN. tit. 9, § 2461. In this case, Plaintiff is not a "consumer" under the VCFA, because he does not allege that the purchased, leased, contracted, or otherwise agreed to pay consideration for Barclays's good or services. *Compare* VT. STAT. ANN. tit. 9, § 2451a (defining "consumer" as "any person who purchases, leases, contracts for, or otherwise agrees to pay consideration for goods or services") and *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 355 F. Supp. 3d 145, 161 (E.D.N.Y. 2018), *with* Compl. ¶ 11 (alleging that Plaintiff's Barclays credit card application was denied). Thus, his claim fails.

**Connecticut Unfair Trade Practices Act**. While CUPTA does not have an express territoriality requirement, *see Fraiser v. Stanley Black & Decker, Inc.*, 109 F. Supp. 3d 498, 505 (D. Conn. 2015) (holding that lack of Connecticut injury or residency not bar to bringing CUPTA claim), the statute does not permit Plaintiff to represent a class under the facts alleged here. *See, e.g.*, *id.* at 504 (holding that, "although [plaintiff] ha[d] individual standing to bring a CUTPA claim, she 'may not bring a class action because [she] could not be representative of class members with the statutorily required in-state residency or injury characteristics.'" (quoting *Metro. Enter. Corp. v. United Techs. Int'l, Corp.*, No. 3:03CV1685, 2004 WL 1497545, at *4 (D. Conn. June 28, 2004)). Thus, even assuming Plaintiff could sufficiently allege a viable CUPTA claim, his claim on behalf of the class must, at a minimum, be stricken. *See id.*

### B. Plaintiff Does Not Allege Damages as Required Under the Multitstate Trade Statutes.

The Multistate Trade Statutes all require a showing of damages to assert a private cause of action. *See* Conn. Gen. Stat. § 42-110g; MASS. GEN. LAWS ch. 93A, § 9(1); N.J. STAT. ANN. §

56:8-19; N.Y. GEN. BUS. LAW § 349(h); VT. STAT. ANN. tit. 9, § 2461; *Teamsters Loc. 237 Welfare Fund v. AstraZeneca Pharms. LP*, 136 A.3d 688, 693 (Del. 2016) (holding that "ascertainable loss" is element of DCFA claim).

As set forth above, Plaintiff only provides generic allegations of damages. *See supra* p. 13. He fails to allege that he actually entered any of his personal information into the Website, that he searched for a particular financial service that may have conveyed his personal financial or private information, or that, as a result, Adobe actually used such information to Plaintiff's detriment. Thus, his claim under the Multistate Trade Statutes fails for lack of damages.

## CONCLUSION

Plaintiff fails to plead facts sufficient to support personal jurisdiction over Barclays, and his allegations, taken as true, do not support any cognizable claim against Barclays. For the reasons states above, Barclays respectfully requests this Court enter an order dismissing the Class Action Complaint either for lack of jurisdiction or failure to state a claim.

Respectfully submitted,

Dated: June 9, 2025

/s/ *Gregory P. Szewczyk*
BALLARD SPAHR LLP
Terence Grugan
Gregory P. Szewczyk (*pro hac vice*)
J. Matthew Thornton (*pro hac vice*)
Alexia C. Chapman (*pro hac vice*)
1735 Market Street, 51st Floor
Philadelphia, PA 19103
T: (215) 864-8320
F: (215) 864-8999

*Counsel for Defendant*
*Barclays Bank Delaware*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of June, 2025, I electronically filed the foregoing Motion to Dismiss Plaintiff's Class Action Complaint with the Clerk of the Court using the CM/ECF system, and that notice of such filing was served on all counsel of record electronically through the CM/ECF system.

*/s/ Stephanie Agabo*
Stephanie Agabo