**LYNCH CARPENTER, LLP**
GARY F. LYNCH
Pa ID No. 56887
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
T: (412) 322-9243
gary@lcllp.com

**DWOSKIN WASDIN LLP**
Eric S. Dwoskin
(*pro hac vice*)
433 Plaza Real, Suite 275
Boca Raton, FL 33432
Tel.: (561) 849-8060
edwoskin@dwowas.com

*Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JEFFREY PARKER, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>BARCLAYS BANK DELAWARE,<br><br>Defendant. | Civil Action No. 2:25-cv-02217-GJP<br><br>**OPPOSITION TO BARCLAYS BANK DELAWARE'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT** |

# TABLE OF CONTENTS

INTRODUCTION ..... 1
BACKGROUND ..... 1
ARGUMENT ..... 3
I. This Court Has Specific Personal Jurisdiction Over Barclays ..... 3
A. Barclays Has Minimum Contacts with Pennsylvania ..... 4
B. The *Calder* Effects Test Is Also Satisfied ..... 8
II. Plaintiff States a Negligence Claim ..... 9
A. Barclays Owed Plaintiff a Duty to Protect His Financial Information ..... 9
B. Plaintiff Alleges Barclays Disclosed His Specific Financial Information ..... 14
C. Plaintiff's Damages Theories Are Cognizable ..... 15
III. Plaintiff States and Unjust Enrichment Claim ..... 17
IV. Plaintiff States a Breach of Confidence Claim ..... 18
V. Plaintiff States and ECPA Claim ..... 19
VI. Plaintiff States a WESCA Claim ..... 21
VII. Plaintiff States a UTPCPL Claim ..... 22
A. Barclays Has Minimum Contacts with Pennsylvania ..... 23
B. Ascertainable Loss ..... 23
VIII. Plaintiff States a Multistate Unfair Deceptive Trade Practices Act Claim ..... 24
CONCLUSION ..... 25

## TABLE OF AUTHORITIES

### Cases

*A.J. v. LMND Med. Grp., Inc.*,
2024 WL 4579143 (N.D. Cal. Oct. 25, 2024) .................... 18, 23

*Allen v. Quicken Loans Inc.*,
2018 WL 5874088 (D.N.J. Nov. 9, 2018) .................... 21

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) .................... 5, 6

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*,
582 U.S. 255 (2017) .................... 4

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .................... 4, 6

*Cabiroy v. Scipione*,
767 A.2d 1078 (Pa. Super. Ct. 2001) .................... 12

*Charlie v. Rehoboth McKinley Christian Health Care Servs.*,
2022 WL 1078553 (D.N.M. Apr. 11, 2022) .................... 13

*Davis v. Hanna Holdings, Inc.*,
771 F. Supp. 3d 552 (E.D. Pa. 2025) .................... 24

*Dibish v. Ameriprise Fin., Inc.*,
134 A.3d 1079 (Pa. Super. Ct. 2016) .................... 23

*Dittman v. UPMC*,
196 A.3d 1036 (Pa. 2018) .................... 10

*D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*,
566 F.3d 94 (3d Cir. 2009) .................... 3

*Doe v. Main Line Fertility, Ltd.*,
2024 WL 1829564 (Pa. Ct. Com. Pl. Jan. 17, 2024) .................... 22

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) .................... 16

*Doe v. OSS Orthopaedic Hosp., LLC*,
2024 WL 2026976 (Pa. Ct. Com. Pl. Apr. 26, 2024) .................... 10, 18, 22

*Doe v. Reproductive Medical Associates of Philadelphia, P.C.*,
2024 WL 1829565 (Pa. Ct. Com. Pl. Feb. 09, 2024) ........ 22

*Doe v. Tenet Healthcare Corp*.,
731 F. Supp. 3d 142 (D. Mass. 2024) ........ 18

*Emmett v. Delta Air Lines, Inc.*,
2024 WL 2816502 (W.D. Pa. June 3, 2024) ........ 22

*Falcone v. Dickstein*,
92 F.4th 193 (3d Cir. 2024) ........ 24

*Fan v. NBA Properties Inc.*,
2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) ........ 14

*First Choice Fed. Union v. Wendy's Co.*,
2017 WL 9487086 (W.D. Pa. Feb. 13, 2017) ........ 13

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct*.,
592 U.S. 351 (2021) ........ 3, 4

*Frederick v. St. Clair Health Corp*.,
No. GD-23-13090, 2024 WL 3375090 (Pa. Ct. Com. Pl. July 02, 2024) ........ 18, 22

*Gay v. Garnet Health*,
2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024) ........ 20

*Gilson v. Doe*,
600 A.2d 267 (Pa. Commw. Ct. 1991) ........ 12

*Hasson v. FullStory, Inc.*,
114 F.4th 181 (3d Cir. 2024) ........ 4, 5, 7, 8

*In re Cap. One Consumer Data Sec. Breach Litig.*,
488 F. Supp. 3d 374 (E.D. Va. 2020) ........ 11, 13

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ........ 17

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
371 F. Supp. 3d 1150 (N.D. Ga. 2019) ........ 13

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 16

*In re GEICO Customer Data Breach Litig.*,
2023 WL 4778646 (E.D.N.Y. July 21, 2023) ........ 16
*In re Generic Pharms. Pricing Antitrust Litig.*,
368 F. Supp. 3d 814 (E.D. Pa. 2019) ........ 25
*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*,
903 F.3d 278 (3d Cir. 2018) ........ 24
*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
440 F. Supp. 3d 447 (D. Md. 2020) ........ 16
*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ........ 17
*In re Rutter's Inc. Data Sec. Breach Litig.*,
511 F. Supp. 3d 514 (M.D. Pa. 2021) ........ 23
*In re Target Corp. Customer Data Sec. Breach Litig.*,
64 F. Supp. 3d 1304 (D. Minn. 2014) ........ 11
*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
2016 WL 2897520 (N.D. Ga. May 18, 2016) ........ 13
*In re Wawa, Inc. Data Sec. Litig.*,
2021 WL 1818494 (E.D. Pa. May 6, 2021) ........ 9, 10
*In re Zantac (Ranitidine) Prod. Liab.*,
2022 WL 16729170 (11th Cir. Nov. 7, 2022) ........ 24
*Ingrao v. AddShoppers, Inc.*,
2024 WL 4892514 (E.D. Pa. Nov. 25, 2024) ........ 9
*International Shoe Co. v. Washington*,
326 U.S. 310 (1945) ........ 4
*Jones v. Com. Bancorp, Inc.*,
2006 WL 1409492 (S.D.N.Y. May 23, 2006) ........ 10
*K.L. v. Legacy Health*,
2024 WL 4794657 (D. Or. Nov. 14, 2024) ........ 19
*Kane v. Univ. of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ........ 18

*Klein v. Facebook, Inc.*,
580 F. Supp. 3d 743 (N.D. Cal. 2022) ........ 16

*Levine v. First Am. Title Ins. Co.*,
682 F. Supp. 2d 442 (E.D. Pa. 2010) ........ 23

*Lugo v. Inova Health Care Servs.*,
2025 WL 905191 (E.D. Va. Mar. 25, 2025) ........ 20

*Martinez v. D2C, LLC*,
2023 WL 6587308 (S.D. Fla. Oct. 10, 2023) ........ 15

*Mayer v. Midwest Physician Admin. Servs., LLC*,
2025 WL 963779 (N.D. Ill. Mar. 31, 2025) ........ 20

*Mayor & City Council of Baltimore v. Merck Sharp & Dohme Corp.*,
2023 WL 8018980 (E.D. Pa. Nov. 20, 2023) ........ 24

*Mellish v. CACH, LLC*,
2020 WL 1472405 (W.D. Pa. Mar. 26, 2020) ........ 23

*Mitchell v. Moore*,
729 A.2d 1200 (Pa. Super. Ct. 1999) ........ 17

*Murphy v. Thomas Jefferson University Hospitals*,
2024 WL 4350328 (E.D. Pa. Sept. 30, 2024) ........ *passim*

*Oliver v. Noom, Inc.*,
2023 WL 8600576 (W.D. Pa. Aug. 22, 2023) ........ 21

*Opris v. Sincera Reprod. Med.*,
2022 WL 1639417 (E.D. Pa. May 24, 2022) ........ 10, 13, 16

*Pottstown Indus. Complex v. P.T.I. Servs., Inc.*,
1992 WL 50084 (E.D. Pa. Mar. 10, 1992) ........ 13

*Pruchnicki v. Envision Healthcare Corp.*,
845 F. App'x 613 (9th Cir. 2021) ........ 17

*Reid v. Zurich Mortgage Solutions*,
2009 WL 10684903 (E.D. Pa. Nov. 12, 2009) ........ 19

*Schnur v. JetBlue Airways Corp.*,
2024 WL 2816552 (W.D. Pa. June 3, 2024) ........ 22

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ........ *passim*

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ........ 14

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ........ 20, 21

*Suber v. Liberty Mut. Ins. Grp.*,
650 F. Supp. 3d 282 (E.D. Pa. 2022) ........ 25

*Vonbergen v. Liberty Mut. Ins. Co.*,
705 F. Supp. 3d 440 (E.D. Pa. 2023) ........ 21

*W.W. v. Orlando Health, Inc.*,
2025 WL 722892 (M.D. Fla. Mar. 6, 2025) ........ 19

*Walden v. Fiore*,
571 U.S. 277 (2014) ........ 3

*Young v. U.S. Dep't of Just.*,
882 F.2d 633 (2d Cir. 1989) ........ 18

**Statutes**

15 U.S.C. §§ 6801 ........ 1
73 P.S. § 201–9.2(a) ........ 23

## INTRODUCTION

Barclays Bank Delaware ("Barclays") operates a website on which customers can apply for credit products and services, such as credit cards, and access their account information. Barclays installed a hidden tracking technology on the website—referred to in the Amended Class Action Complaint [ECF 16] ("AC") as the Adobe Tracking Pixel—that captured consumers' communications with Barclays and transmitted them to a third-party marketing company named Adobe. The communications Adobe eavesdropped on identified both (1) the individual consumer; and (2) the specific products or services they were requesting or obtaining on the website. This information is protected under the Gramm–Leach–Bliley Act (GLBA), 15 U.S.C. §§ 6801, *et seq*. which expressly prohibits financial institutions, like Barclays, from disclosing it. Plaintiff now asserts claims under state and federal privacy laws on behalf of himself and a putative class, seeking damages and equitable relief.

## BACKGROUND

Barclays operates an online financial services platform—https://cards.barclaycardus.com/—where its consumers can apply for credit cards and other financial products. ECF 1, ¶ 2. Barclays installed a hidden tracking technology on the website called the Adobe Tracking Pixel. *Id.* ¶ 29. This tracking technology collected financial data related to consumers' use of Barclays's platform and disclosed that information to a third-party marketing company named Adobe. *Id.* ¶¶ 3–4. It functions by secretly placing certain files, called cookies, on the users' web browser that compel the web browser to transmit data containing information on each user's identity and financial information to Adobe. *See id.* ¶¶ 17–18.

The information Barclays disclosed to Adobe included: (1) data identifying the individual consumer using Barclays's platform, including their email address, and data identifying the

consumer's web browser, *id.* ¶¶ 16, 30; (2) the URL of the specific web pages the user visited, which include descriptive titles identifying the information the user requested and disclosed the financial services the user was obtaining, *id.* ¶¶ 16(b), 31; and (3) data showing the financial products the user requested or obtained, which also disclosed the financial services the user was obtaining, *id.* ¶ 31. Collectively, this information permitted Adobe (and anyone else who received it) to identify each specific user as a Barclays customer and identify the financial services the user viewed, applied for, or purchased on Barclays's financial services platform. *Id.* ¶ 31.

Barclays and Adobe profited from Barclays's collection and disclosure of this information. *Id.* ¶ 33. Barclays profited because Adobe used the information to optimize Barclays's marketing. *Id.* ¶ 15. Adobe, in turn, profits by selling Barclays more advertising and other services, and by using the data on Barclays's customers to optimize its product offerings for other Adobe customers. *Id.* ¶ 27.

The complaint alleges that these disclosures violated, among other laws, the GLBA. *Id.* ¶¶ 6-7, 34–38. Under the GLBA, financial institutions like Barclays are prohibited from disclosing a consumer's "personally identifiable financial information" without advance notice and opt-out rights. *Id*. Personal financial information includes, among other things, any information a consumer provides to obtain a financial product or service, and any information a financial institution obtains about a consumer in connection with providing a financial product or service. *Id.* The GLBA includes specific examples of protected personal financial information that are indistinguishable from the information Barclays disclosed to Adobe here, including, among other things: (1) "[t]he fact that an individual is or has been one of [the financial institution's] customers or has obtained a financial product or service from [the financial institution]"; (2) "any information [a financial institution] collect[s] through an Internet 'cookie' (an information collecting device

from a web server)"; and (3) "any information that … [the financial institution] . . . obtain[s] in connection with . . . servicing a credit account." *Id.*

Plaintiff used Barclays's online financial services platform to apply for a credit card. *Id.* ¶ 13. This interaction with Barclays's platform was tracked and disclosed to Adobe in the manner described above. *Id.* Through that systematic and automatic process, Barclays sent Adobe (1) information showing Plaintiff applied for a credit card, including the specific credit card he applied for, (2) information collected through Adobe internet cookies, and (3) information Barclays obtained while servicing his credit card application. *Id.* After he interacted with Barclays, Plaintiff noticed targeted advertising from Barclays related to financial products and services, including Facebook advertisements for Barclays credit cards and also for other credit cards too. *Id*. Plaintiff did not consent to these disclosures. *Id.* Had Plaintiff known that Barclays was sharing his personal financial information with Adobe, he would have applied for a credit card at another bank. *Id.*

## ARGUMENT

### I. This Court Has Specific Personal Jurisdiction Over Barclays

The Supreme Court has articulated two tests for specific jurisdiction: (1) the traditional "minimum contacts" test and (2) the *Calder* "effects" test. The traditional test for specific jurisdiction entails a three-step analysis. *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd*., 566 F.3d 94, 102 (3d Cir. 2009). First, the court must evaluate whether the defendant established minimum contacts by "deliberately 'reach[ing] out beyond' its home—by, for example, 'exploit[ing] a market' in the forum State or entering a contractual relationship centered there." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct*., 592 U.S. 351, 359 (2021) (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). Second, the court must determine whether the litigation "arise[s] out of or relate[s] to" at least one of those contacts. *Ford Motor*, 592 U.S. at 352 (quoting

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017)). Third, if the first two requirements are met, the defendant has the burden to make a compelling showing that exercising personal jurisdiction "offend[s] traditional notions of fair play and substantial justice." *Ford Motor*, 592 U.S. at 358 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945)); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). "The *Calder* 'effects' test requires a plaintiff to plead facts establishing that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum; and (3) the defendant expressly aimed his tortious conduct at the forum." *Hasson v. FullStory, Inc.*, 114 F.4th 181, 187 (3d Cir. 2024).

Here, this Court may exercise specific personal jurisdiction over Barclays under either test because Barclays invited Plaintiff to apply for a credit card in Pennsylvania, placed tracking technology files on his computer in Pennsylvania after Barclays knew he was located in Pennsylvania, directed his computer to disclose his personally identifiable financial information from his computer in Pennsylvania, and thereafter targeted him with advertising knowing he was located in Pennsylvania. ECF 16, ¶¶ 11, 13, 18, 22, 23.

**A. Barclays Has Minimum Contacts with Pennsylvania**

Barclays deliberately reached into Pennsylvania to exploit the market for providing credit services and enter into contracts with Pennsylvania consumers. In particular, Plaintiff alleges: (a) as a part of its regular course of business, Barclays targets Pennsylvania consumers to extract, collect, maintain, distribute, and exploit for its own profit, not only the Pennsylvania consumers' financial information that it diverts to its own servers, but also all of the other personal identifying information that it extracts from the tracking technology it places on their devices without their knowledge or consent; Barclays generates substantial profits from Pennsylvania consumers; Barclays knows about its Pennsylvania consumer base, conducts regular business in Pennsylvania,

contacts Pennsylvania residents, interacts with them as an intermediary for merchants within its payments network, installs its software onto their devices in Pennsylvania, and continues to track their activities from there. ECF 16, ¶ 11.

No one disputes the first prong of the traditional minimum contacts analysis is satisfied here. In *Briskin*, the most recent appellate authority on personal jurisdiction related to the placement of internet advertising technology on consumers' computers, the Ninth Circuit analyzed virtually identical facts and concluded that Shopify, a foreign payments vendor, purposefully directed its activities at the relevant forum, California: "it is clear that Shopify expressly aimed its conduct at California through its extraction, maintenance, and commercial distribution of the California consumers' personal data . . . ." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 756–57 (9th Cir. 2025). *Accord Hasson*, 114 F.4th at 193 (addressing similar market; "There is no doubt that Papa Johns purposefully availed itself of the Pennsylvania market."). Barclays has minimum contacts with Pennsylvania for the same reasons.

Plaintiff's claims also "arise out of" Barclays's contact with his device, which Plaintiff alleges Barclays knew was in Pennsylvania, and "relate to" Barclays's Pennsylvania contacts, because Plaintiff alleges the kind of injury that would "tend to be caused" by Barclays's contacts with Pennsylvania consumers. In particular, Plaintiff alleges: (a) Barclays invited Plaintiff in Pennsylvania to apply for financial products, including credit cards, from Barclays's website; (b) Barclays knew that Plaintiff resided in Pennsylvania when he applied for a credit card from Pennsylvania, and Plaintiff interacted with Barclays's website when he applied for a credit card from Pennsylvania; (c) Barclays planned to perform part of its obligations under the credit card in Pennsylvania, including shipping Plaintiff a credit card, had he been approved for a credit card and making available funds for his personal use in Pennsylvania; (d) Barclays communicated its

rejection of Plaintiff's credit card application to Plaintiff in Pennsylvania; (e) Barclays deployed computer files called cookies, including Adobe cookies, on Plaintiff's computer in Pennsylvania; (f) Barclays had Plaintiff's Pennsylvania IP address prior to deploying cookies, including Adobe cookies, on Plaintiff's computer in Pennsylvania, meaning Barclays knew *prior to deploying cookies that Plaintiff resided in Pennsylvania*; (g) Barclays aimed to place cookies on Plaintiff's computer in Pennsylvania, including cookies used by Adobe to facilitate targeting Plaintiff with advertising in Pennsylvania; (h) Barclays used the financial information that was collected from Plaintiff in Pennsylvania, including via Adobe cookies, to target Plaintiff with ads in Pennsylvania; (i) Plaintiff received email in Pennsylvania related to credit inquiries initiated by Barclays related to his credit card information; (j) shortly after Plaintiff applied for a credit card through Barclays's website, Plaintiff noticed targeted advertising from Defendant related to financial products and services from his computer in Pennsylvania, including Facebook advertisements for Barclays credit cards but also for other credit cards too, (k) Barclays falsely disclaimed that it would not share personal information with non-affiliates to market to consumers, and (l) Barclays directed Plaintiff's computer to transmit his personally identifiable financial information to Adobe from his computer in the forum state. ECF 16, ¶¶ 11, 13, 22-23, 41. "[Barclays'] installation of software onto unsuspecting [Pennsylvanians'] devices and extracting personal data from them is the kind of contact that would tend to cause privacy injuries. [Plaintiff's] claims therefore satisfy the second requirement for specific jurisdiction." *Briskin*, 135 F.4th at 760.[1]

Barclays doesn't advance an argument that Plaintiff's allegation fail to satisfy the purposeful availment prong of the traditional minimum contacts test. Instead, Barclays argues that

[1] Assuming the first two prongs are met, the burden shifts to Barclays to make a "compelling case" that the exercise of jurisdiction is not reasonable. *Burger King*, 471 U.S. at 476–78. Barclays has waived this argument by not making it, and there is otherwise not a compelling case to be made.

Plaintiff's claims do not bear a strong relationship to the forum under *Hasson.* ECF 19 at 4–5. *Hasson* addressed whether a Pennsylvania court had specific jurisdiction to hear a consumer privacy claim against Papa John's pizza company for using "session replay technology"—a type of computer code—that captured website interaction data to improve website functionality and user experience. The court declined to find personal jurisdiction where the only forum contact was delivering "code" to a user's browser because the plaintiff did not allege that Papa Johns "knew that a given user was in Pennsylvania *before* it sent the code to that user's browser," and there were no other relevant contacts, including that Papa Johns did not target the plaintiff with advertising in the forum state. *Hasson*, 114 F.4th at 191 (emphasis in original). As an initial matter, Plaintiff does not allege the delivery of functional code, but rather the installation of *files* on Plaintiff's computer called cookies. ECF 16, ¶ 17. *See also* ECF 16, ¶ 103 (alleging cookies are a "device"). Moreover, Plaintiff alleges significantly more than even the mere delivery of computer files into the forum state, as described above. ECF 16, ¶¶ 11, 13, 22–23, 41. Barclays characterizes Plaintiff's allegations as attempting to create the "illusion" of contact by providing a list of "predicate contacts consistent with the same allegations he originally relied upon—namely, that he resides in Pennsylvania and accessed the Website there." ECF 19 at 5. By that, it appears Barclays means that all Plaintiff has alleged is the delivery of code for functional purposes, as in *Hasson*. But Plaintiff's allegations aren't illusory; he alleges, among the other forum-related activities described above, that Barclays had information in its possession showing that Plaintiff was in Pennsylvania and thereafter installed advertising technologies on Plaintiff's Pennsylvania-based computer that caused the computer to send Plaintiff's personal financial information from Pennsylvania to Adobe. Nor is the fact that Plaintiff's present allegations are "consistent" with his

original allegations problematic. True, Plaintiff bolstered his allegations in response to Barclays's original motion to dismiss, but that's a virtue, not a vice.

The Third Circuit recognized in *Hasson* that whether the mere delivery of functional code satisfied the arising or related to prong of the traditional test presented a close question. *Id*. at 193. Here, Plaintiff has alleged significantly more: Barclays is using *advertising technology*, not functional code, to install files on consumers' computers to direct the disclosure of their personally identifiable financial information to a third party and to target them with advertising in violation of a federal regulation that itself makes the use of cookies an unlawful means to share personal financial information. In other words, federal law specifically prohibits banks, like Barclays, from doing the exact thing that Barclays did to Plaintiff and his computer in Pennsylvania. That makes this case even stronger than *Briskin* and readily distinguishable from *Hasson*'s narrow holding.

### B. The *Calder* Effects Test Is Also Satisfied

For these same reasons, Plaintiff can satisfy the *Calder* effects test. Barclays does not dispute Plaintiff satisfies the first two prongs of the test, and instead focuses on the "express aiming prong" on the grounds that Barclays did not know Plaintiff was in Pennsylvania prior to delivering code to his computer. ECF 19 at 5. But Plaintiff alleges such knowledge: "Barclays knew that Plaintiff resided in Pennsylvania when he applied for a credit card from Pennsylvania," "Barclays had Plaintiff's Pennsylvania IP address ***prior to*** deploying cookies, including Adobe cookies, on Plaintiff's computer in Pennsylvania," and "Barclays aimed to place cookies on Plaintiff's computer in Pennsylvania, including cookies used by Adobe to facilitate targeting Plaintiff with advertising in Pennsylvania." ECF 16, ¶ 11 (emphasis added). And Barclays entirely ignores all of the other contacts aimed at Plaintiff in Pennsylvania too, including inviting him to apply for a credit card in Pennsylvania and rejecting him for that card in Pennsylvania, targeting him with

advertising in Pennsylvania, initiating a credit check of him in Pennsylvania, and falsely disclaiming Barclays's use of personal information for advertising to Pennsylvania. ECF 16, ¶¶ 11, 13, 41. Moreover, this case is unique in that the GLBA itself makes the use of cookies to share personal financial information unlawful (unlike functional internet technology, like session replay technology, for instance). ECF 16, ¶ 6. As such, whereas generally deploying functional internet technologies to collect personal information might not give rise to specific personal jurisdiction in every case, where federal regulations make that exact conduct unlawful as to financial information, and Barclays did it anyway in Pennsylvania, it is a proper ground for specific personal jurisdiction.

*Perkins v. Goodyear Tire and Rubber Co*. is distinguishable because it involved session replay technology, and the personal jurisdiction allegations were identical to *Hasson*. ECF 19 at 5 (citing No. 22-cv-1521, 2025 WL 81568, at *3 (W.D. Pa. Jan. 13, 2025)). And in *Ingrao*, the complaint did not allege the "defendant 'knew that he—or any other user—was in Pennsylvania <u>before</u> [the code] was dispatched to his browser." *Ingrao v. AddShoppers, Inc.*, No. 24-cv-1022, 2024 WL 4892514, at *10 (E.D. Pa. Nov. 25, 2024) (emphasis in original). Indeed, "Plaintiffs [there] fail[ed] to specify their location where AddShoppers allegedly wiretapped them." *Id*. Notably, neither case involved allegations similar to those at issue here, or a situation where the defendant's use of the technology at issue was a violation of a specific federal law. Additionally, both cases predate the Ninth Circuit's opinion in *Briskin*, which deals with *advertising technology*, like the technology here, not simply the delivery of code that aided the website functioning.

## II. Plaintiff States a Negligence Claim

### A. Barclays Owed Plaintiff a Duty to Protect His Financial Information

Pennsylvania law recognizes "[t]he duty to maintain and protect sensitive data with reasonable care.'" *In re Wawa, Inc. Data Sec. Litig.*, No. 19-cv-6019, 2021 WL 1818494, at *4

(E.D. Pa. May 6, 2021) (quoting *Dittman v. UPMC*, 196 A.3d 1036, 1056 (Pa. 2018)). *See also Opris v. Sincera Reprod. Med.*, No. 21-cv-3072, 2022 WL 1639417, at *4 (E.D. Pa. May 24, 2022) ("Under Pennsylvania law, those who affirmatively collect sensitive information owe a duty to exercise reasonable care to protect against the foreseeable harm . . ."); *Murphy v. Thomas Jefferson University Hospitals*, No. 22-cv-4674, 2024 WL 4350328, at *6 (E.D. Pa. Sept. 30, 2024); *Doe v. OSS Orthopaedic Hosp., LLC*, No. 2023-SU-001346, 2024 WL 2026976 (Pa. Ct. Com. Pl. Apr. 26, 2024) ("*OSS*") (negligence claim stated based on disclosure of sensitive information via tracking technology). Barclays's response is that it did not owe this duty to Plaintiff, in particular, because he was not a bank "customer" and thus there was no special relationship. ECF 19 at 7-8. Plaintiff, however, alleges he *was* a Barclays customer (ECF 16, ¶ 13) because he shopped and applied for a Barclays's credit product.

Putting that aside, regardless of what duties Barclays otherwise owed to its "customers," Barclays *assumed* a duty to Plaintiff when it required him to submit his personal financial information in connection with the transaction at issue, and Plaintiff supplied that information to Barclays at Barclays's request. ECF 16, ¶ 13. *Dittman*, 649 Pa. at 513; *In re Wawa*, 2021 WL 1818494, at *5. Barclays affirmatively promised not to disclose Plaintiff's financial information for advertising purposes. *Id.*, ¶¶ 39–43. By offering a credit product to Plaintiff, requiring Plaintiff to submit personal financial information with the application, promising not to disclose that information for advertising purposes, and accepting Plaintiff's submission of the data requested, Barclays assumed a duty to protect Plaintiff's financial information while processing his application, regardless of whether, prior to that assumption, Barclays separately owed similar duties to Plaintiff as a bank "customer." *Id.*; *see also cf. Jones v. Com. Bancorp, Inc.*, No. 06-cv-835, 2006 WL 1409492, at *3 (S.D.N.Y. May 23, 2006) (duty existed where the "plaintiff was

required to provide certain information . . . to open her account, and [the bank] represented that it would safeguard that information"); *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 400 (E.D. Va. 2020) ("Capital One and Amazon voluntarily undertook a duty to protect its customers' PII manifested via its affirmative acts and representations regarding its ability and responsibility to render adequate data protection services to its customer") (Virginia law); *In re Target Corp. Customer Data Sec. Breach Litig.*, 64 F. Supp. 3d 1304, 1310 (D. Minn. 2014) (recognizing under Minnesota law "duty to safeguard credit- and debit-card data"); *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1046 (N.D. Cal. 2025).

Barclays also argues that if it has a duty of care, that does not extend to "general website impression data." ECF 19 at 8. That characterization of the information at issue is directly at odds with Plaintiff's actual allegations, which allege the disclosure of protected financial information, and not merely "general website impression data." Barclays's mischaracterization of Plaintiff's allegations should not be credited at Rule 12.

In addition to being rooted in the Pennsylvania common law, Barclays's duty to Plaintiff is further supported by statute. *Shah*, 768 F. Supp. 3d at 1045 (noting that both the GLBA and the FTC Act can support a common-law duty of care to protect sensitive financial information). The GLBA imposes an obligation on Barclays to protect individuals' personal financial information, including any information the bank collects through internet cookies. ECF 16, ¶ 6. Under the GLBA, that duty flows to all individuals that interact with a bank, and not merely bank "customers." Here, both the GLBA and the FTC Act support the duty at issue because Plaintiff alleges that Barclays disclosed that Plaintiff applied for a credit card with the bank to Adobe through Adobe internet cookies. ECF 16, ¶ 13. And the GLBA (and FTC Act) draw no relevant

distinction between individuals who applied for bank loans that were denied and those that have an ongoing relationship for this purpose.

Barclays argues that neither statute can support a finding of negligence *per se*. But whether or not the FTC Act and the GLBA can support a finding of negligence *per se* is a different issue than whether those statutes can support the duty element of a traditional negligence claim. Negligence *per se* is a doctrine under which a statute establishes the standard of care, such that a violation of the statute establishes *both* duty *and* breach. *Cabiroy v. Scipione*, 767 A.2d 1078, 1079 (Pa. Super. Ct. 2001) ("The concept of negligence *per se* establishes both duty and the required breach of duty where an individual violates an applicable statute, ordinance or regulation designed to prevent a public harm."). But even if a statute cannot, on its own, go all the way to negligence *per se* (*i.e.*, establish the standard of care and a breach of that standard), that does not mean that the statute and its requirements are irrelevant to the threshold duty element of a traditional claim for negligence. *See Shah*, 768 F. Supp. 3d at 1045 (recognizing that whether the statute has a private right of action is an issue only for negligence *per se*); *cf. Gilson v. Doe*, 600 A.2d 267, 270 (Pa. Commw. Ct. 1991) ("The duty may be established by statute, and violation of the statute may further establish breach of that duty, giving rise to negligence *per se*."). Here, federal law imposes requirements on Barclays to treat Plaintiff's personal financial information confidentiality and not disclose it to third parties for advertising purposes through internet tracking technologies. That law informs Barclays's relationship with and obligations to Plaintiff during the transaction at issue.

Putting all of that aside, there is no reason why the alleged violations of the GLBA and FTC Act cannot go further, beyond the threshold issue of duty, and support a finding of negligence *per se*. Barclays argues that the conduct proscribed by the GLBA does not "delineate specific conduct from which a violation can be clearly ascertained" by analogy to statutes that merely

require a person to act "reasonably." ECF 19 at 9. That is wrong. The specific examples of protected financial information could not be clearer under the GLBA, ECF 16, ¶ 6, and there is nothing unclear about the rules requiring a bank to maintain an accurate privacy policy or refrain from disclosing information regarding consumers via internet cookies, *id.* ¶¶ 39–42. The pertinent parts of the GLBA rules and regulations at issue do not use the word "reasonable." Nor does the fact that neither the GLBA nor the FTC Act has a private right of action bar a finding of negligence *per se* under Pennsylvania law because the statutes are designed for the protection of "*individuals* who may be harmed by the conduct." *Pottstown Indus. Complex v. P.T.I. Servs., Inc.*, No. 91-cv-5660, 1992 WL 50084, at *14 (E.D. Pa. Mar. 10, 1992) (emphasis in original). While Barclays asserts "[f]ederal courts routinely reject negligence *per se* claims where the underlying statute contains no private right of action to avoid creating a de facto private right of action," in fact, courts across the country routinely allow negligence *per se* claims based on violations of the GLBA's implementing rules and the FTC Act. *See, e.g.*, *Opris*, 2022 WL 1639417, at *8 (allowing negligence per se claim to proceed on FTC violation allegation); *Capital One Data Breach*, 488 F. Supp. 3d at 407 (collecting cases and sustaining FTCA claim brought under New York law); *Charlie v. Rehoboth McKinley Christian Health Care Servs.*, 2022 WL 1078553, at *9–10 (D.N.M. Apr. 11, 2022) (permitting negligence per se claim brought under New Mexico law and based on FTCA); *First Choice Fed. Union v. Wendy's Co.*, 16-cv-506, 2017 WL 9487086, at *4 (W.D. Pa. Feb. 13, 2017) (same, applying Pennsylvania law); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 371 F. Supp. 3d 1150, 1174 (N.D. Ga. 2019) (allowing negligence per se claim brought under Georgia law and based on GLBA implementing rule); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 14-md-2583, 2016 WL 2897520, *4 (N.D. Ga. May 18, 2016) (negligence per se claim based on violation of Section 5 of the FTC Act). In short, Barclays

has not shown that under Pennsylvania law Plaintiff cannot use the GLBA or FTC Act to establish an evidentiary presumption of negligence at trial.

**B. Plaintiff Alleges Barclays Disclosed His Specific Financial Information**

Barclays argues that Plaintiff failed to allege that it caused Plaintiff any harm. ECF 19 at 11-12. That argument is, as an initial matter, inconsistent with Barclays's litigation conduct to date. Barclays removed this case to federal court, and thus asserted Article III jurisdiction. Barclays's assertion of Article III jurisdiction presupposes that this is a "case" or "controversy" under Article III, and thus that Plaintiff's allegations show injury in fact, causation, and redressability. *E.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998) (noting that the "triad of injury in fact, causation and redressability constitutes the core of Article III's case-or-controversy requirement"). Thus, by removing the case, Barclays acknowledged that Plaintiff had alleged an injury in fact (*i.e.* harm) caused by Barclays's conduct at issue.

Putting that aside, Plaintiff has adequately alleged that Barclays caused him harm by disclosing his personal information without consent. He alleges that Barclays installed third-party tracking technology on its website, that he interacted with that website to apply for a credit product, that he supplied Barclays with his personal financial information in connection with applying for the credit product, that the tracking technology Barclays installed on the website functioned as Barclays intended and disclosed his personal financial information to Adobe, and that Plaintiff thereafter received targeted advertising based on the disclosures at issue. ECF 16, ¶ 13. In particular, Plaintiff alleges Barclays disclosed Plaintiff had obtained a Barclays's service, including that he applied for a credit card and the specific credit card Plaintiff submitted an application for—the exact information that the GLBA protects under federal law. Indistinguishable allegations were sustained in *Shah*. *Shah*, 768 F. Supp. 3d at 1044–45; *see also Fan v. NBA*

*Properties Inc.*, No. 23-cv-5069, 2024 WL 1297643, at *2 (N.D. Cal. Mar. 26, 2024) (citing *Martinez v. D2C, LLC*, No. 23-cv-21394, 2023 WL 6587308, at *3 (S.D. Fla. Oct. 10, 2023) (having "no difficulty concluding that alleging, generally, that a defendant disclosed the [the private content] is sufficient")).[2]

Barclays criticizes Plaintiff's use of "shortly after" to indicate temporal proximity. That is sufficient detail to plead a claim under Rule 8. The *Thomas Jefferson* court did not credit the argument Barclays is making. There, the plaintiffs alleged that the hospital was a third-party because it was not the intended recipient of the consumer's communication. The court found that the plaintiffs did not allege the identity of the intended recipient of the relevant communications or details about it, such as content, timing, or number. 2023 WL 7017734, at *5. The court did not say that the allegation "shortly after" was insufficient to allege causation under Rule 8.

### C. Plaintiff's Damages Theories Are Cognizable

Plaintiff advances two damages theories based on the non-consensual disclosure of his confidential information: (1) Barclays's non-consensual disclosure of Plaintiff's confidential personal financial information, which impaired his right to control the disclosure of that information; and (2) Barclays's failure to pay Plaintiff for the value of the information that was taken (and used by Barclays for pecuniary purposes) without his consent. *E.g.*, ECF 16, ¶¶ 68–70. Each of these theories has been recognized under similar circumstances in many cases. *See*, *e.g.*, *Thomas Jefferson*, 2024 WL 4350328, at *6 ("Plaintiffs have sufficiently pleaded that the disclosure of Plaintiffs' IIHI to Meta to allow Defendant and Meta to tailor advertisements on their respective web properties impaired Plaintiffs' control over their IIHI, and would not have occurred

[2] The caselaw Barclays cites on this point, *see* ECF 19 at 11, is distinguishable because in those cases the plaintiffs did not allege the personal information protected by law was disclosed.

without Defendant's installation of Meta's Collection Tools MyJeffersonHealth"); *Opris*, 2022 WL 1639417, at *5 (negligence injury sufficient where plaintiff alleged loss of value of protected information). *See also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020) ("Plaintiffs have adequately alleged that Facebook's tracking and collection practices would cause harm or a material risk of harm to their interest in controlling their personal information."); *In re GEICO Customer Data Breach Litig.*, No. 21-cv-2210, 2023 WL 4778646, at *11 (E.D.N.Y. July 21, 2023), *report and recommendation adopted*, 691 F. Supp. 3d 624 (E.D.N.Y. 2023) ("An individual's control of information concerning her person—the privacy interest the [Plaintiffs] claim here—was a cognizable interest at common law"); *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 802 (N.D. Cal. 2022) (collecting cases on the value of consumer data); *Doe v. Microsoft Corp.*, No. 23-cv-718, 2023 WL 8780879, at *4 (W.D. Wash. Dec. 19, 2023) (sufficiently "alleges that her personal data carries financial value"); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig*., 440 F. Supp. 3d 447, 461 (D. Md. 2020) ("Here plaintiffs have adequately pled that the personal identifying information collected by Marriott has value. Plaintiffs allege that Marriott recognizes the value of this information and collects it to better target customers and increase its profits."). Here, by having his confidential data disclosed without his consent, Plaintiff lost control over his data (a cognizable injury unto itself). And by virtue of Barclays taking Plaintiff's data without compensation, and not paying Plaintiff for the data prior to using it for Barclays's marketing purposes, Plaintiff was separately deprived of the value of his data (an independent economic injury). Courts have recognized the property value of personal information, and held that the actual value of the damages flowing from the conduct at issue here is "not for the Court to determine at the motion to dismiss stage." *Thomas Jefferson*, 2024 WL 4350328, at *5 (rejecting similar damages argument where "Plaintiffs allege that they have suffered damages for several

reasons, including in particular damages occurring from the loss of value of Plaintiffs' [PHI]. Several courts have recognized the property value of personal information. The actual value of the damages is not for the Court to determine at a motion to dismiss stage.").

Barclays does not address Plaintiff's damages theory regarding control of his data. And it misstates the caselaw related to the value of his data, as neither *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 515 (S.D.N.Y. 2001), nor *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021), address the damages theory alleged. *DoubleClick* evaluated the value of demographic information—not protected financial information. *Pruchnicki* is distinguishable because "the harm [in a data breach] is that permissibly obtained user data was *lost*, not that it was taken without permission in the first place." *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1013 (N.D. Cal. 2024) (emphasis in original). Barclays "fails to grapple with the substance of plaintiffs' theory in this case that they provided something of value to [Barclays] and received nothing in return. This can constitute an economic injury." *Id.*

### III. Plaintiff States an Unjust Enrichment Claim

As an initial matter, Plaintiff's unjust enrichment claim is plead in the alternative. ECF 16, ¶ 82. Rule 8(2)(d) permits alternative pleading in circumstances such as this one where the claim for money damages is disputed—here, Plaintiff does not even assert a count for breach of contract. *Thomas Jefferson*, 2024 WL 4350328, at *7.

To plead unjust enrichment, a plaintiff must show that: (1) the plaintiff conferred benefits on the defendant, (2) the defendant appreciated such benefits, and (3) the benefits were accepted and retained under such circumstances that it would be inequitable for the defendant to retain the benefit without the payment of value. *See Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999). Plaintiff pleads each element. Plaintiff conferred his data on Barclays, which Barclays used

for advertising, and Barclays "received the benefit of this targeted advertisement." *Thomas Jefferson*, 2024 WL 4350328, at *7. *See also Kane v. Univ. of Rochester*, No. 23-cv-6027, 2024 WL 1178340, at *15 (W.D.N.Y. Mar. 19, 2024) (benefit "in the form of enhanced advertising services and more cost-efficient marketing on Facebook."); *OSS Orthopaedic Hosp*, 2024 WL 2026976 (unjust enrichment claim stated based on disclosure of sensitive information via tracking technology); *A.J. v. LMND Med. Grp., Inc.*, No. 23-cv-3288, 2024 WL 4579143, at *4 (N.D. Cal. Oct. 25, 2024) (similar); *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 151 (D. Mass. 2024) (similar).

Barclays's caselaw does not address Plaintiff's actual damages theory. Moreover, *Barletti v. Connexin Software, Inc*. does not address the scenario where a plaintiff confers economic value on the defendant directly, as here. *See* ECF 19 at 13 (citing No. 2:22-cv-4676, 2023 WL 6065884, at *3 (E.D. Pa. Aug. 17, 2023) ("They don't plead that they paid Connexin directly.")).

## IV. Plaintiff States a Breach of Confidence Claim

For the reasons stated above, Barclays established a relationship of confidence with Plaintiff by virtue of its request and receipt of, and subsequent control over, Plaintiff's personally identifiable financial information. Indeed, one of the most frequently asserted contexts for a breach of confidence theory is against a bank. *See Young v. U.S. Dep't of Just.*, 882 F.2d 633, 640 (2d Cir. 1989). Plaintiff adequately alleges that Barclays breached Plaintiff's confidences by requesting and obtaining his personal financial information and then disclosing it without his consent. *See OSS,* 2024 WL 2026976; *Frederick v. St. Clair Health Corp.*, No. GD-23-13090, 2024 WL 3375090 (Pa. Ct. Com. Pl. July 02, 2024) ("*St. Clair*"); *Doe v. Clearbrook, Inc*., No. 2023-05201, 2024 Pa. Dist. & Cnty. Dec. LEXIS 127 (Pa. Ct. Com. Pl. Feb. 15, 2024) ("*Clearbrook*"); *LMND*, 2024 WL 4579143, at *4.

*Reid v. Zurich Mortgage Solutions* is distinguishable. ECF 19 at 14 (citing No. 07-cv-4479, 2009 WL 10684903, at *4 (E.D. Pa. Nov. 12, 2009)). In *Reid*, the plaintiff was facing foreclosure on his mortgage. He approached a mortgage broker to help him refinance who allegedly promised to secure refinancing with a lender, even though the broker knew it was unlikely. Ultimately, his bank did not refinance the loan, and the plaintiff sued the broker for essentially leading him on. The court allowed the plaintiff to replead a fraud claim. The court rejected the breach of confidence claim because the broker did not "offer[] financial planning services or promise[] to act only in the plaintiffs' best interests." *Id*. at *4. In contrast, here Barclays promised to hold Plaintiff's data in confidence and not to disclose it for advertising purposes.

**V. Plaintiff States an ECPA Claim**

Barclays recognizes that a party to a communication can be subject to ECPA liability where the crime-tort exception applies. ECF 19 at 16. That exception applies here because the same conduct that violated the ECPA—intercepting Plaintiff's communications with the website and disclosing them to a third-party marketing company without consent or compensation—was tortious and unlawful beyond the violation of the ECPA itself, including the various torts pled in the complaint and the violations of WESCA and the GLBA.

As an initial matter, courts have recognized the application of the crime-tort exception where the conduct at issue was a breach of confidence claims and violated state wiretapping laws, which authority Barclays ignores. *See K.L. v. Legacy Health*, No. 3:23-cv-1886, 2024 WL 4794657, at *6 (D. Or. Nov. 14, 2024); *W.W. v. Orlando Health, Inc*., No. 6:24-cv-1068, 2025 WL 722892, at *7 (M.D. Fla. Mar. 6, 2025). Moreover, contrary to Barclays' suggestion, the most recent case to evaluate the crime-tort exception and an ECPA claim based on the GLBA is *Shah*, which sustained the claim. *Shah*, 768 F. Supp. 3d at 1053. There, the court held that "[b]ecause

Defendant's actions are allegedly tortious, the one-party exemption does not apply." *Id*. (citing cases). In addition, the court held "[a]nother reason that the one-party exemption does not apply is because the issue of whether Plaintiffs consented to Defendant's conduct is at the center of the dispute. Because consent is a factual determination, it cannot be determined on the pleadings." *Id*. Both of those are good reasons to sustain the claim here. Indeed, in the analogous situation of HIPAA violations based on tracking technology, courts readily sustain ECPA claims, finding the crime-tort exception applies. *See, e.g.*, *Stein v. Edward-Elmhurst Health*, No. 23-cv-14515, 2025 WL 580556, at *5 (N.D. Ill. Feb. 21, 2025) ("Courts from coast to coast have recognized that a violation of HIPAA can give rise to the crime-tort exception under the ECPA."). And courts analyzing *Caro*, *Sussman*, and the Third Circuit's decisions in *Google Cookie* and *Nickelodeon* have all sustained pixel tracking claims when the purpose is financial or targeted advertising, because a party can commit a crime or tort for financial purposes. *E.g.*, *Gay v. Garnet Health*, 23-cv-6950, 2024 WL 4203263, at *3 (S.D.N.Y. Sept. 16, 2024) (after analyzing *Caro*, "Where Defendant's conduct became problematic is where it intended to transmit Plaintiffs' PHI and PII without Plaintiffs' consent *for commercial purposes*.") (emphasis added); *Mayer v. Midwest Physician Admin. Servs., LLC*, No. 23-cv-3132, 2025 WL 963779, at *5 (N.D. Ill. Mar. 31, 2025) (discussing *Sussman* and concluding, "When statutes speak in terms of an illicit 'purpose,' the fact that there may also have been some legitimate reason motivating the defendant's conduct does 'not sanitize the illegitimate one.'"); *Lugo v. Inova Health Care Servs.*, No. 1:24-cv-700, 2025 WL 905191, at *7 (E.D. Va. Mar. 25, 2025) (sustaining ECPA claim, and recognizing that *Google Cookie* did not involve pixels protected by federal law). Indeed, this court in *Thomas Jefferson* sustained an ECPA claim based on disclosure of protected information for advertising purposes with internet tracking. 2024 WL 4350328, at *5 (after discussing *Nickelodeon*). Moreover, the

torts at issue here—breach of confidence, and violations of the GLBA and WESCA—are "independent" of the ECPA violation. *See, e.g.*, *Stein*, 2025 WL 580556, at *4. As the *Stein* court explained, for the crime-tort exception to apply, the conduct that violated the ECPA must *also* be independently tortious (*e.g.*, violate a *different* law). But that does not mean the underlying conduct that violates the ECPA and the separate statute (*e.g.*, the interception) must be different. *Id.* [3]

### VI. Plaintiff States a WESCA Claim

Plaintiff alleges the contents of his communication under WESCA because he alleges that Adobe intercepted data identifying the specific credit card for which Plaintiff submitted an application. ECF 16, ¶ 14. *See, e.g.*, *Vonbergen v. Liberty Mut. Ins. Co.*, 705 F. Supp. 3d 440, 456–57 (E.D. Pa. 2023) (defendant "intercepted, among other things, what [the plaintiff] searched for on [the defendant's] website[,]" as well as "mouse clicks and movements, ... information and PII inputted[,] … [and] pages and content viewed[.]" Considering this, the court "decline[d] to find that [plaintiff's] 'browsing activities' lack[ed] 'contents' sufficient to make out a claim at [the] early [(12(b)(6))] juncture."); *Oliver v. Noom, Inc.*, No. 22-cv-1857, 2023 WL 8600576, at *7 (W.D. Pa. Aug. 22, 2023) ("[Plaintiff] claims that [defendant], through the Session Replay Code

---

[3] *Quicken Loans* rejected the plaintiff's ECPA claim because, in the court's view, the tortious activity was the same as the interception, and the purpose of the interception was financial. *See Allen v. Quicken Loans Inc.*, No. 17-cv-12352, 2018 WL 5874088, at *6 (D.N.J. Nov. 9, 2018). Respectfully, courts that have recently applied *Sussman* and *Caro* to internet advertising technology that discloses statutorily protected information have held that the ECPA is applicable, as explained herein. The court also viewed the plaintiff's allegations regarding the GLBA as conclusory, found that the defendant was not a financial institution subject to the GLBA, and unlike here, the plaintiff essentially conceded the GLBA did not protect his information. *Id.*, at *6-7. Moreover, the court did not address the crime-tort exception as it relates to breach of confidence or a state-law wiretapping claim. Apart from being readily distinguishable, *Quicken Loans* is also, respectfully, wrong. The issue under the ECPA is whether the conduct "independently" violated some other law—that is, the "crime" or "tort" must be something other than the violation of the ECPA itself. *See Stein*, 2025 WL 580556, at *4. That does not mean that the *conduct* that violated the other law must be different than the conduct that violated the ECPA. If the same conduct violates both the ECPA and is separately a crime or a tort, the crime-tort exception applies. *Id.*

on its website, collected personal information she input as part of [defendant's] 10-minute online quiz, including her height, weight, gender, age, reason for wanting to lose weight, how active she is, how often she eats, and whether she is at risk for specific health issues. … At this stage, these allegations are sufficient to establish that [defendant] intercepted 'contents' of [p]laintiffs' communications."); *Schnur v. JetBlue Airways Corp*., No. 2:22-cv-1621, 2024 WL 2816552, at *8 (W.D. Pa. June 3, 2024) (Defendant's argument "that mouse clicks and movements, keystrokes, search terms, information inputted by [p]laintiff, and pages and content viewed by [p]laintiff … would not be considered contents … fails[.]") (cleaned up); *Emmett v. Delta Air Lines, Inc.*, No. 2:22-cv-1568, 2024 WL 2816502, at *8–9 (W.D. Pa. June 3, 2024) (similar). Data identifying the specific credit card for which Plaintiff applied for is not, as Barclays's incorrectly contends, the characteristics of a generic browser transmission. Browsers may transmit some non-content record information (*i.e.*, a timestamp) alongside the substance of the communication (*i.e.*, a consumers' inputs on a website and the specific products they are requesting or obtaining). Plaintiff's claims are based on disclosure of the latter, which is the "content" of the communication.

## VII. Plaintiff States a UTPCPL Claim

As an initial matter, numerous Pennsylvania courts have sustained UTPCPL claims based on the nonconsensual disclosure of protected information via tracking technologies. *See St. Clair*, 2024 WL 3375090; *OSS*, 2024 WL 2026976; *Clearbrook, Inc*., 2024 Pa. Dist. & Cnty. Dec. LEXIS 127; *Doe v. Reproductive Medical Associates of Philadelphia, P.C.*, No. 230502846, 2024 WL 1829565 (Pa. Ct. Com. Pl. Feb. 09, 2024); *Doe v. Main Line Fertility, Ltd*., No. 230702146, 2024 WL 1829564 (Pa. Ct. Com. Pl. Jan. 17, 2024). The result should be the same here.

### A. Reliance

Justifiable reliance is a question of fact, not to be decided at this stage of the proceedings. *See Levine v. First Am. Title Ins. Co.*, 682 F. Supp. 2d 442, 467 (E.D. Pa. 2010). In any event, Plaintiff alleges he "would have applied for a credit card with another bank had he known Barclays would share his personal information with third party technology vendors." ECF 16, ¶ 13. That is reliance. *See Mellish v. CACH, LLC*, No. 19-cv-1217, 2020 WL 1472405, at *5 (W.D. Pa. Mar. 26, 2020) ("So long as the plaintiff acted, or failed to act, in response to and as a result of the defendant's wrongful conduct, he has established justifiable reliance under the "deceptive" prong of the UTPCPL's catchall provision"); *LMND*, 2024 WL 4579143, at *2 ("Had Lemonaid notified users of this practice, Plaintiffs allege that they would have acted differently by not disclosing their private information to Lemonaid."). Barclays's reliance on *Rutter's* is misplaced both because Plaintiff alleges actual reliance and also because there the court "question[ed] the materiality of the alleged omissions" as to data security in a data breach generally across industries. Here Congress passed the GLBA to specifically require banks to protect the financial information at issue—that satisfies the materiality standard and establishes a ***presumption*** of reliance under the UTPCPL. *In re Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp. 3d 514, 544 (M.D. Pa. 2021). If the information was not material, there would not be a body of law devoted to its confidentiality.

### B. Ascertainable Loss

To plead an ascertainable loss, the plaintiff must point to money or property that he would have had but for the defendant's deceptive practices. 73 P.S. § 201–9.2(a). Plaintiff alleges as a result of Defendant's deceptive practices, Plaintiff gave his valuable personal financial information to Barclays, which he would not have otherwise done, and that Barclays disclosed his data without his consent, and without compensating Plaintiff, and thereafter targeted him with advertising. ECF

16, ¶ 13; *Dibish v. Ameriprise Fin., Inc.*, 134 A.3d 1079, 1089 (Pa. Super. Ct. 2016) (benefit of the bargain losses are sufficient under the UTPCPL). Moreover, as discussed above, Barclays's assertion of Article III jurisdiction necessarily accepts that Plaintiff suffered an injury in fact that is redressable in this Court. Plaintiff will quantify his damages later in the case. *See, e.g.*, *Falcone v. Dickstein*, 92 F.4th 193, 205 (3d Cir. 2024) ("That [plaintiff's] alleged injuries are difficult to quantify is irrelevant."); *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 287 (3d Cir. 2018) ("a plaintiff need not develop detailed economic models at the pleading stage"); *Thomas Jefferson*, 2024 WL 4350328, at *5 ("Several courts have recognized the property value of personal information. The actual value of the damages is not for the Court to determine at a motion to dismiss stage.").

## VIII. Plaintiff States a Multistate Unfair Deceptive Trade Practices Act Claim

Barclays contends that Plaintiff does not have personal standing to assert claims under other state laws for various reasons. But Plaintiff is not seeking to assert those claims in his personal capacity, but only as a representative of absent class members from those states who have been similarly injured. Whether Plaintiff is a proper representative of those class members is properly asked under Rule 23. Indeed, while the Third Circuit has not addressed the question, all five circuit courts that have considered the issue agree it is not a question of standing. *See In re Zantac (Ranitidine) Prod. Liab. Litig.*, 2022 WL 16729170, at *5 (11th Cir. Nov. 7, 2022) ("[A]ll circuits which have addressed whether a plaintiff can represent unnamed class members whose claims fall under different states' laws have concluded that it is a question that concerns Rule 12(b)(6) or Rule 23—not Article III"). And so have the most recent cases from this District. *See Davis v. Hanna Holdings, Inc.*, 771 F. Supp. 3d 552, 570 (E.D. Pa. 2025); *Mayor & City Council of Baltimore v. Merck Sharp & Dohme Corp.*, No. 23-cv-828, 2023 WL 8018980, at *10 (E.D. Pa.

Nov. 20, 2023); *Suber v. Liberty Mut. Ins. Grp.*, 650 F. Supp. 3d 282, 292 (E.D. Pa. 2022); *In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 827–31 (E.D. Pa. 2019).

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Barclays's motion to dismiss in full.

GARY F. LYNCH
Pa ID No. 56887
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
T: (412) 322-9243
gary@lcllp.com

Eric S. Dwoskin
(*pro hac vice*)
**DWOSKIN WASDIN LLP**
433 Plaza Real, Suite 275
Boca Raton, FL 33432
Tel.: (561) 849-8060
edwoskin@dwowas.com

*Attorneys for Plaintiff and the Putative Class*