**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**JEFFREY PARKER, individually and on behalf of all others similarly situated,**

**Plaintiff,**

**v.**

**BARCLAYS BANK DELAWARE,**

**Defendant.**

**Case No. 2:25-cv-02217-GJP**

# BARCLAYS BANK DELAWARE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS


I. The Court Lacks Personal Jurisdiction over Barclays ........ 1

II. Plaintiff's Breach of Confidence Claim Fails ........ 3

III. Plaintiff Fails to State a Claim Under the ECPA ........ 4

IV. Plaintiff's WESCA Claim Fails ........ 6

V. Plaintiff's Negligence Claim Fails ........ 7

VI. Plaintiff's Unjust Enrichment Claim Fails ........ 8

VII. Plaintiff Fails to State a Claim Under UTPCPL ........ 9

VIII. Plaintiff's Fails to State a Claim Under the Multistate Unfair Trade Practice Acts ........ 10

**TABLE OF AUTHORITIES**

**Cases** **Page No.**

*A.J. v. LMND Med. Grp.*,
No. 23-cv-03288, 2024 WL 45791431 (N.D. Cal. Oct. 25, 2024) ........ 9

*Allen v. Quicken Loans Inc.*,
No. 17-cv-12352, 2018 WL 58740788 (D.N.J. Nov. 9, 2018) ........ 5

*Beaman v. Bank of Am., N.A.*,
No. 2:21-cv-20561, 2024 WL 3219224 (D.N.J. June 28, 2024) ........ 8

*Cohen v. Casper Sleep Inc.*,
No. 1:17-cv-09391, 2018 WL 3392977 (S.D.N.Y. Jul. 12, 2018) ........ 5

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) ........ 6, 7

*Daugherty v. Adams*,
No. 2:17-cv-00368, 2019 WL 7987859 (W.D. Pa. Nov. 15, 2019) ........ 6

*Dittman v. UPMC*,
196 A.3d 1036 (Pa. 2018) ........ 7

*Hasson v. FullStory*,
114 F.4th 181 (3d Cir. 2024) ........ 1, 2

*In re Actiq Sales and Marketing Practices Litigation*,
307 F.R.D. 150 (E.D. Pa. 2015) ........ 8

*In re Nickelodeon Consumer Privacy Litigation*,
No. 12-cv-07829, 2014 WL 3012873 (D.N.J. July 2, 2014) ........ 6, 7

*In re Rutter's Inc. Data Security Breach Litigation*,
511 F. Supp. 3d 514 (M.D. Pa. 2021) ........ 9, 10

*In re Zynga Privacy Litigation*,
750 F.3d 1098 (9th Cir. 2014) ........ 6

*Ingrao v. AddShoppers, Inc.*,
No. 2:24-cv-01022, 2024 WL 4892514 (E.D. Pa. Nov. 25, 2024) ........ 2

*K. L. v. Legacy Health*,
No. 3:23-cv-01886, 2024 WL 4794657 (D. Or. Nov. 14, 2024) ........ 4, 5

*Levine v. First American Title Insurance Company*,
682 F. Supp. 2d 442 (E.D. Pa. 2010) ........ 9

*Lugo v. Inova Health Care Services*,
No. 1:24-cv-00700, 2025 WL 905191 (E.D. Va. Mar. 25, 2025) ........ 4

*Marshall v. Prestamos CDFI, LLC*,
No. 5:21-cv-04337-JMG, 2023 WL 2727541 (E.D. Pa. Mar. 30, 2023) ........ 10

*Mellish v. CACH LLC*,
No. 2:19-cv-01217, 2020 WL 1472405 (W.D. Penn. Mar. 26, 2020) ........ 9

*Murphy v. Thomas Jefferson University Hospital*,
2:22-cv-04674, 2024 WL 4350328 (E.D. Pa. Sept. 30, 2024) ............ 7, 9

*Oliver v. Noom, Inc.*,
No. 2:22-cv-01857, 2023 WL 8600576 (W.D. Pa. Aug. 22, 2023) ............ 7

*Opris v. Sincera Reproductive Medicine*,
No. 2:21-cv-03072, 2022 WL 1639417 (E.D. Pa. May 24, 2022) ............ 7

*Perkins v. Goodyear Tire & Rubber Company*,
No. 2:22-cv-01521, 2025 WL 81568 (W.D. Pa. Jan. 13, 2025) ............ 2

*Shah v. Capital One Financial Corporation*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ............ 5

*Stein v. Edward-Elmhurst Health*,
No. 1:23-cv-14515, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ............ 4, 6

*USAA Federal Savings Bank v. PLS Financial Services*,
340 F. Supp. 3d 721 (N.D. Ill. 2018) ............ 8

*Vonbergen v. Liberty Mutual Insurance Company*,
705 F. Supp. 3d 440 (E.D. Pa. 2023) ............ 7

*Young v. U.S. Department of Justice*,
882 F.2d 633 (2d Cir. 1989) ............ 3

**Statutes** **Page No.**

15 U.S.C.A. § 6809 ............ 8

17 CFR § 160.3 ............ 8

Plaintiff's Opposition fails to meaningfully engage with the core arguments set forth in Barclays's Motion and leaves the vast majority of authority Barclays cites entirely unaddressed—including binding Third Circuit precedent. Indeed, Plaintiff fails to respond to several of Barclays's key arguments entirely, thereby conceding them. To the extent he did attempt to address the arguments Barclays made, Plaintiff relies on out-of-circuit authority that either contradicts controlling law or is readily distinguishable. The Court should grant Barclays's Motion.

## I. The Court Lacks Personal Jurisdiction Over Barclays.

Plaintiff's response to Barclays's jurisdictional arguments fails for numerous reasons.

First, none of the Pennsylvania-based contacts Plaintiff attempts to attribute to Barclays relate directly to the conduct giving rise to Plaintiff's claims. *E.g.*, FAC ¶¶ 67, 139. Rather, the contacts Plaintiff cites flow solely from the "systematic data sharing process" that was triggered by ***Plaintiff's*** engagement with the Website, ***after*** Barclays had already installed Adobe Pixel. *Id.* ¶ 13. But if those contacts were sufficient to establish specific jurisdiction, any website user from any state could hail Barclays into their home forum, irrespective of whether Barclays intended to target consumers in that state, merely because Barclays operates a nationally-accessible Website—a result the Third Circuit has held, under substantially similar circumstances, cannot stand. *Hasson*, 114 F.4th 181, 190 (3d Cir. 2024) ("[A] defendant does not expressly target a forum merely by operating a website that is accessible there—even when the plaintiff alleges harm in that forum arising out of his engagement with that website.").

Second, Plaintiff has failed to distinguish *Hasson* and its progeny. Nowhere in those opinions do the courts purport to narrow their holdings to websites using session replay technology, which Plaintiff (incorrectly) characterizes as "simply deliver[ing] code that aid[s] the website['s] functioning." *See* Opp. at 7; *contra Hasson*, 114 F.4th at 185. To the contrary, the *Hasson* court acknowledged that session replay technology captures data encompassing "virtually

every user interaction, including all mouse movements, clicks, scrolls, zooms, window resizes, keystrokes, text entry, and numerous other forms of a user's navigation and interaction through the website[,]" which "[v]endors and website operators use . . . to recreate a user's entire browsing session on that website"—which is far more information than Plaintiff alleges Barclays's "technology vendor," Adobe, is purportedly capable of collecting. *Hasson*, 114 F.4th at 185.

A comparison of the allegations in *Hasson* and *Perkins* with those asserted here makes clear that session replay code and Adobe Pixel operate in fundamentally the same manner. *Compare Hasson*, 114 F.4th at 185 (alleging that defendant's website "delivers" the code "to a user's browser," which "follow[s] the code's instructions by sending . . . data to a . . . third-party server"), and *Perkins v. Goodyear Tire & Rubber Co.*, 2025 WL 81568, at *1 (W.D. Pa. Jan. 13, 2025) (alleging the defendant's website "embed[s] snippets of JavaScript computer code . . . , which then deploys on each website visitor's internet browser for the purpose of intercepting and recording the website visitor's electronic communications with the Goodyear website"), *with* FAC ¶ 20 (alleging "[w]hen a user accesses a website that has tracking technology, the website deploys tracking technology onto the web browser on the user's computer").

The fact that website owners may later use data collected by session replay technology or Adobe Pixel in different ways is a distinction without a difference for purposes of the traditional and *Calder* effects tests—as evidenced by courts in this district applying *Hasson* to advertising technology virtually identical to Adobe Pixel. *See Ingrao v. AddShoppers, Inc.*, 2024 WL 4892514, at *3 (E.D. Pa. Nov. 25, 2024). Plaintiff's speculative theory that courts would have disregarded binding Third Circuit precedent in favor of Ninth Circuit precedent is a thinly veiled request for this Court to do the same and should be rejected.

As thoroughly explained in the Motion, Plaintiff failed to allege facts sufficient to establish

general or specific jurisdiction because, under the tests as applied in the Third Circuit, the use of forum agnostic tracking technologies on a nationally accessible website does not itself equate to expressly aiming or targeting every state from which the website can be accessed. Mot. 3–7. Nor are those tests satisfied by allegations that Barclays's Website—like all websites, including those discussed in the Third Circuit cases—also collects IP addresses from which the general location of the server or virtual private network associated with a website visitor's device can be discerned.

## II. Plaintiff's Breach of Confidence Claim Fails.

In support of his breach of confidence claim, Plaintiff declares—without any supporting legal authority—that Barclays's alleged "request and receipt of, and subsequent control over, Plaintiff's personally identifiable financial information" is itself sufficient to plausibly plead a confidential relationship between Barclays, a bank, and Plaintiff, a website visitor who applied to be a Barclays customer but was denied. *See* Opp. at 18. Plaintiff's contention runs contrary to Pennsylvania law, as reflected by the numerous cases Barclays cited, *see* Mot. at 14, only one of which Plaintiff attempted (unsuccessfully) to distinguish.

Plaintiff argues that "one of the most frequently asserted contexts for a breach of confidence theory is against a bank." Opp. at 18. Yet the best support Plaintiff could offer for this assertion is a 1989 opinion by the Second Circuit, *Young v. U.S. Dep't of Just.*, in which the court examined whether, under New York law, a bank owed its longtime banking customer a duty to refrain from disclosing detailed account records and ultimately declined to recognize such a duty. 882 F.2d 633, 640 (2d Cir. 1989) (reflecting that the court could not "articulat[e] any rationale upon which to extend the breach-of-confidence cause of action to banking relationships").

Plaintiff goes on to provide a string cite of legal citations, as if to convey to the Court that his position has legal merit. But his citations reflect nothing more than (1) a series of one-page summary orders denying preliminary objections to Pennsylvania state court complaints alleging

either breach of physician-patient confidentiality or asserting no breach of confidentiality claim at all (e.g., *OSS Orthopaedic Hosp.* and *St. Clair Health Corp.*), and (2) an out-of-state order denying dismissal of a breach of confidence claim against a medical provider under other states' laws (e.g., *LMND Med. Grp. Inc.*). The dearth of case law supporting Plaintiff's position supports dismissal.

**<u>III. Plaintiff Fails to State a Claim Under the ECPA.</u>**

Plaintiff does not dispute that to state a viable ECPA claim he must allege facts sufficient to support the statute's crime-tort exception. Nor does Plaintiff meaningfully dispute that the numerous cases Barclays cited in its Motion—all of which are based on or consistent with binding Third Circuit precedent, *see* Mot. at 15–16 (citing *Google Cookie*)—support a finding that Plaintiff's allegations fall short of establishing the exception applies here.

Plaintiff argues, instead, that the Court should disregard the cases adopting the Third Circuit's interpretation of the crime-tort exception and follow the handful of decisions upholding ECPA claims based on other Circuits' "more liberal" interpretation of the exception in cases involving the interception of sensitive medical information from online patient portals in violation of HIPAA. *See Lugo v. Inova Health Care Servs.*, 2025 WL 905191, at *5 (E.D. Va. Mar. 25, 2025) (noting that Second and Seventh Circuits take a "more liberal approach" to the crime-tort exception); *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *2 (N.D. Ill. Feb. 21, 2025) (applying interpretation of crime-tort exception that court acknowledges is departure from prevailing interpretation). Plaintiff did not offer any basis to deviate from Third Circuit precedent.

Moreover, as recognized in the *Legacy Health* case Plaintiff cites, there is a material difference between a defendant's interception of sensitive medical data from a patient's private online health portal and the interception of data from publicly accessible portions of the defendant's website, the latter of which Plaintiff alleges here. *K.L. v. Legacy Health*, 2024 WL 4794657, at *6 (D. Or. Nov. 14, 2024) (allowing ECPA claim to proceed "only with respect to the

Patient Portal" and dismissing ECPA and breach of confidence claims to the extent premised on interception of "browsing data and search queries" from the defendant's public-facing website).

The Court should also decline Plaintiff's request in a footnote for it to disregard the only case in this Circuit that has actually addressed the crime-tort exception in the GLBA context (*Quicken*), and instead apply a California case (*Shah*) in which the court disposed of the crime-tort argument in just two sentences by accepting as true a single allegation in the plaintiff's 421-paragraph complaint that recited, in a conclusory manner, that the defendant "intercepted the contents of the electronic communications for an unauthorized purpose, which resulted in tortious acts." *Shah*, 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025). Barclays respectfully submits that this Court should follow the well-reasoned in-Circuit analysis.

In response to Barclays's argument that Plaintiff fails to allege a requisite criminal or tortious purpose, Plaintiff argues that courts have "sustained pixel tracking claims when the purpose is financial or targeted advertising, because a party can commit a crime or tort for financial purposes." Opp. at 20. But this misconstrues—and fails to actually respond to—Barclays's argument. Barclays is not arguing that it is shielded from liability under the ECPA merely because Plaintiff alleged that one of the purposes for Barclays's use of the Adobe Pixel was commercial or financial. Rather, Barclays is arguing that Plaintiff has alleged ***only that*** Barclays acted for such non-criminal purposes, and not that it used the Adobe Pixel "***for the purpose of***" committing any such crime or tort, let alone with the "primary motivation" of injuring Plaintiff, as required to invoke the crime-tort exception. *See* Mot. at 18 (quoting *Cohen v. Casper Sleep*, 2018 WL 3392977 (W.D. Pa. 2023)).

Finally, Plaintiff argues that to invoke the crime-tort exception, he is entitled to rely on the same unlawful interception that he claims violates the ECPA, so long as that same conduct is

"independently tortious (*e.g.* [sic], violate[s] a *different* law)." Opp. at 21 (emphasis in original). For this, he cites *Stein*, which, as noted above, is out-of-circuit authority in which the court openly acknowledged that its decision was a departure from the Third Circuit's holding in *Google Cookie*. *See* 2025 WL 580556 at *5. Not only is Plaintiff's reliance on *Stein* misplaced, but it led him to make a fatal concession: that he is, indeed, seeking to invoke the crime-tort exception based on the "same conduct that violate[d] [] the ECPA." Opp. at 21 n.3. Under binding Third Circuit precedent, this concession alone is dispositive of Plaintiff's ECPA claim.

## <u>IV. Plaintiff's WESCA Claim Fails.</u>

Plaintiff concedes that his WESCA claim is not based on the Website's interception of any searches he did or any personal information he entered while using the Website, including to complete his credit card applications. *See Daugherty v. Adams*, 2019 WL 7987859, at *13 (W.D. Pa. Nov. 15, 2019) (noting an argument is deemed waived "if plaintiff had an opportunity to make an argument in response to defendant's motion to dismiss and fails to do so"). Thus, Plaintiff's WESCA claim is based solely on his allegation that the Website intercepted "data identifying the specific credit card for which Plaintiff submitted an application," Opp. at 21—data that, as reflected in the FAC, was not inputted by Plaintiff himself but extracted from the URL of pages he visited on the Website. *See* FAC ¶ 31, ¶ 38.

"URLs of web pages [a plaintiff] visited" generally do not contain the "contents" of a plaintiff's communications with a website and thus cannot support a WESCA claim. Mot. at 20. While Plaintiff argues that there are instances in which a URL can contain both content and non-content, courts only find content in URLs where they reflect a plaintiff's affirmative communications with the website, usually in the form of search terms. *See Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 71 (W.D. Pa. 2023) (holding that when a URL captures "a user's request to a search engine for specific information," the "search term[s]" in that URL might qualify as

content (quoting *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014))); *In re Nickelodeon Consumer Priv. Litig.*, 2014 WL 3012873, at *15 (D.N.J. July 2, 2014) ("words entered by a user into a Google search might themselves be considered contents if reproduced in a URL that is subsequently disclosed"); *see also* Opp. at 21 (citing *Vonbergen v. Liberty Mut. Ins. Co.*, 705 F. Supp. 3d 440, 456–57 (E.D. Pa. 2023) (holding that plaintiff satisfied WESCA's content requirement by alleging defendant intercepted what plaintiff "searched for" on the website); *Oliver v. Noom, Inc.*, 2023 WL 8600576, at *7 (W.D. Pa. Aug. 22, 2023) (holding the personal information inputted as part of defendant's "10-minute online quiz" qualified as contents).

Plaintiff does not allege that the URLs the Website intercepted here reflected information he inputted into the Website. Rather, his allegations establish, at most, that the URLs reflected information "correspond[ing] to different physical locations of pages, documents, and files on [a defendant's] servers, " which, under pertinent case law, cannot serve as the basis of a wiretap claim. *See, e.g.*, *Cook*, 689 F. Supp. 3d at 71; *Nickelodeon*, 2014 WL 3012873 at *15 (holding that "video title information contained in the URLs" did not constitute "contents").

## V. Plaintiff's Negligence Claim Fails.

Plaintiff does not cite any cases supporting a common law duty of care that would arise under the circumstances he alleged. Rather, the cases Plaintiff cites establish, at most, a duty: to "maintain and protect sensitive data" from "the foreseeable harm of ***a data breach***," *Opris v. Sincera Reprod. Med.*, 2022 WL 1639417, at *4 (E.D. Pa. May 24, 2022) (emphasis added); owed by an employer to an employee to implement adequate security measures to protect confidential employee information, *Dittman v. UPMC*, 196 A.3d, 1056–57 (Pa. 2018); or owed by a physician to a patient to not disseminate sensitive medical information, *Murphy v. Thomas Jefferson Univ. Hosp.*, 2024 WL 4350328, at *6 (E.D. Pa. Sept. 30, 2024).

The rest of Plaintiff's negligence arguments relate to the GLBA and the FTC. All of those

arguments fail. As a preliminary matter, Plaintiff is incorrect as a matter of law that he was a "customer" of Barclays, *see* Opp. at 11–12, because the GLBA specifically defines that term. Under the GLBA, a "consumer" becomes a "customer" only after a "continuing relationship between [the] consumer and [Barclays]" has been established "under which [Barclays] provide[s] one or more financial products or services to the consumer . . . ." *Id.* § 160.3(k), (l); *see also* 15 U.S.C.A. § 6809 ("The term 'time of establishing a customer relationship' shall . . . , in the case of a financial institution engaged in extending credit directly to consumers to finance purchases of goods or services, mean the time of establishing the credit relationship with the consumer."). Because his application was denied, the customer relationship with Plaintiff never formed as a matter of law.

In any event, Plaintiff's duty argument in the Opposition is predicated on his allegation that Barclays's GLBA Privacy Notice has purported inaccuracies. Opp. at 10. In other words, Plaintiff's negligence theory is an attempt to enforce the GBLA's Privacy Rule. This is improper because, as other courts have held, "Congress did not intend to create a private right of action to enforce this statute and its regulations." *USAA Fed. Savs. Bank v. PLS Fin. Servs.*, 340 F. Supp. 3d 721, 725–26 (N.D. Ill. 2018) (dismissing negligence claim "[b]ecause the GLBA, the Privacy Rule, and the Safeguards Rule do not allow for a private right of action"); *see also Beaman v. Bank of Am., N.A.*, 2024 WL 3219224, at *18 (D.N.J. June 28, 2024) ("The Court holds that Plaintiffs' claims for negligence due to violations of the GLBA fail because the GLBA does not invoke a common law duty of care.").

## **<u>VI. Plaintiff's Unjust Enrichment Claim Fails.</u>**

Plaintiff does not dispute that Pennsylvania "bar[s] an equitable remedy for unjust enrichment when a party has an adequate remedy at law." *See In re Actiq Sales and Marketing Practices Litig.*, 307 F.R.D. 150, 165 n.24 (E.D. Pa. 2015). Nor does he dispute that his statutory

and unjust enrichment claims against Barclays seek the same relief for the same alleged conduct. These concessions, alone, are grounds for dismissing Plaintiff's unjust enrichment claim.

Plaintiff argues that he is entitled to plead "unjust enrichment in the alternative," Opp. at 17, but he fails to even identify what claim is he pleading it in the alternative to. In any event, as the court recognized in *Murphy*, a plaintiff can plead unjust enrichment in the alternative only "***in certain circumstances,***" including where "the existence of a contract is uncertain or its validity is disputed by the parties." 2024 WL 4350328 at *8 (emphasis added). No such circumstances are present here.

## **VII. Plaintiff Fails to State a Claim Under UTPCPL.**

Plaintiff has not, and cannot, establish justifiable reliance to sustain his UTPCPL claim. Critically, nowhere in his Amended Complaint or Opposition does Plaintiff state that he actually ever reviewed the Barclays Privacy Notice prior to visiting the Website or filling out any credit applications. This omission is fatal to Plaintiff's UTPCPL claim and renders *Mellish v. CACH LLC* inapplicable. 2020 WL 1472405, at *5 (W.D. Penn. Mar. 26, 2020) (noting that "a UTPCPL plaintiff must show that he suffered an 'ascertainable loss . . . ***as a result*** of [the deceptive practice]" (emphasis in original)).

The other cases on which Plaintiff relies similarly fail to persuade. In *Levine v. First Am. Title Ins. Co.*, the court declined to dismiss the plaintiffs' UTPCPL claim after finding the plaintiffs' allegations met the heightened specificity standard of Rule 9(b) due to their fraud and misrepresentation claims. 682 F. Supp. 2d 442, 467 (E.D. Pa. 2010). *A.J. v. LMND Med. Grp.* does not analyze the UTPCPL at all. No. 23-cv-03288, 2024 WL 4579143l at *2–*3 (N.D. Cal. Oct. 25, 2024) (analyzing claims under New York and Massachusetts consumer protections statutes and dismissing them to the extent plaintiff relied on the deceptive trade practice prong of each statute).

With respect to ascertainable loss, Plaintiff does not dispute that he must "point to money

or property that he would have had but for the defendant's fraudulent actions." *Rutter's Data Sec. Litig.*, 511 F. Supp. 3d 514, 541 (M.D. Pa. 2021). Yet, Plaintiff once again fails to properly allege this element of his claim. It is not enough for Plaintiff to vaguely allege that he "gave his valuable personal financial information to Barclays," and that Barclays "disclosed his data without his consent, and without compensating [him]." The FAC does not allege that Barclays "disclosed ***his*** data" to Adobe. Rather, it alleges that Barclays disclosed information contained in URLs associated with certain pages Plaintiff visited on the Website. Plaintiff cannot plausibly establish that this data was ever his property or had monetary value to him, because this is not data that he himself ever possessed or maintained control over—just like Plaintiff would not be able to claim any interest in security footage showing that he stopped in a particular aisle of a grocery store.

## VIII. Plaintiff Fails to State a Claim Under the Multistate Unfair Trade Practices Acts.

Plaintiff does not dispute that he lacks standing to assert claims under the Multistate Acts. He nevertheless argues that the Court should defer the decision on whether he can serve as a class representative until class certification. Opp. at 24–25. However, not only does Plaintiff ignore recent cases holding otherwise—*see, e.g.*, *Marshall v. Prestamos CDFI, LLC*, 2023 WL 2727541, at *6–7 (E.D. Pa. Mar. 30, 2023)—all of the cases he cites recognize that, notwithstanding this issue of whether a plaintiff has Article III standing to assert claims on behalf of class, the claims he asserts are still subject to dismissal if they fail under Rule 12(b)(6). In the Motion, Barclays argued for dismissal under various statute-specific grounds (*e.g.*, New Jersey requires purchase of a product for consumption) and for failure to allege damages. Mot. 22–25. Plaintiff failed to respond to any of these arguments, thereby conceding them.

## CONCLUSION

For the reasons set forth herein and in its Motion, Barclays respectfully requests this Court dismiss the Amended Class Action Complaint with prejudice.

Respectfully submitted,

Dated: July 28, 2025

*/s/Gregory Szewczyk*

**BALLARD SPAHR LLP**
Terence Grugan
Gregory P. Szewczyk (*pro hac vice*)
J. Matthew Thornton (*pro hac vice*)
Alexia C. Chapman (*pro hac vice*)
1735 Market Street, 51st Floor
Philadelphia, PA 19103
T: (215) 864-8320
F: (215) 864-8999

*Counsel for Defendant*
*Barclays Bank Delaware*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of July, 2025, I electronically filed the foregoing Reply In Support of Barclays's Motion to Dismiss Plaintiff's Amended Class Action Complaint with the Clerk of the Court using the CM/ECF system, and that notice of such filing was served on all counsel of record electronically through the CM/ECF system.

*/s/Sherri L. Clark*
Sherri L. Clark