IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY PARKER, on behalf of himself and all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>BARCLAYS BANK DELAWARE,<br><br>*Defendant.* | CIVIL ACTION<br>NO. 25-2217 |

**Pappert, J.**                                                                                           September 29, 2025

## MEMORANDUM

Jeffrey Parker brings a putative class action against Barclays Bank Delaware, alleging negligence, unjust enrichment, breach of confidence, and violations of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, unfair and deceptive trade practices statutes in six other states, and the Electronic Communications Privacy Act. Barclays moves to dismiss for lack of personal jurisdiction and failure to state claims upon which relief can be granted. Because the Court lacks personal jurisdiction over Barclays, the Court grants Barclays's motion on that basis and dismisses his claims without prejudice.

I

Barclays operates a website, https://cards.barclaycardus.com/, where consumers can apply for credit cards and other financial products. (Am. Compl. ¶ 2, Dkt. No. 16.) Barclays's website uses cookies, known as Adobe Tracking Pixels, to monitor a consumer's online activities. *See* (*Id.* ¶ 11, 13, 29–31). Barclays transmits that data to

third parties like Adobe, which use that information for "marketing and other pecuniary purposes." (*Id.* ¶ 21.) Specifically, Barclays collects and discloses a consumer's email address, the webpage they visited, their interactions with its website, and other "unique identifiers" like their "geographic location" and "device specifications." (*Id.* ¶¶ 17, 30–31.)

Parker applied from Pennsylvania for a Barclays credit card through its website. (*Id.* ¶ 13.) After Parker entered his "personal and financial information," Barclays denied his application. (*Id.*) During this process, Barclays purportedly "deployed" Pixels to Parker's computer, "causing [his] device to contemporaneously in real time and invisibly re-direct [his] personally identifiable guest records and communications to third parties like Adobe." (*Id.* ¶¶ 11, 22.) Soon after, Parker noticed targeted advertisements from Barclays related to financial products and services, "including Facebook advertisements for Barclays credit cards but also for other credit cards too." (*Id.* ¶ 13). Barclays acted without Parker's knowledge or consent. (*Id.*) Had Parker known what Barclays would do, he would have applied for a credit card with another bank. (*Id.*)

## II

### A

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), "a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Such a motion "is inherently a matter which requires resolution of factual issues outside the pleadings, *i.e.*, whether *in personam jurisdiction* actually lies." *Time Share Vacation*

*Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). But "when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a *prima facie* case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht*, 384 F.3d at 97. Still, a plaintiff must prove personal jurisdiction by a preponderance of the evidence. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992).

Once the defense has been raised, "the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence" and may not "rely on the bare pleadings alone." *Patterson v. FBI*, 893 F.2d 595, 603–04 (3d Cir. 1990) (quoting *Time Share*, 735 F.2d at 67 n.9). Indeed, the "plaintiff must respond with actual proofs, not mere allegations." *Id*.

B

Courts sitting in diversity apply the law of the forum state to determine whether jurisdiction is proper. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). Pennsylvania's long-arm statute permits personal jurisdiction "based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States." *See* 42 Pa. Cons. Stat. Ann. § 5322(b); *see also Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992) ("The Pennsylvania statute permits the courts of that state to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the Due Process Clause of the Fourteenth Amendment." (citation modified)).

Personal jurisdiction can be general or specific. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 352 (2021). Barclays is not subject to general jurisdiction

in Pennsylvania because Parker never establishes that Barclays is incorporated or has its principal place of business here. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." (citation modified)).

III

Specific jurisdiction exists when the "plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). The Supreme Court "has articulated two tests for specific jurisdiction: (1) the 'traditional' test—also called the 'minimum contacts' or purposeful availment test . . . and (2) the 'effects' test." *Hasson v. FullStory, Inc.*, 114 F.4th 181, 186 (3d Cir. 2024) (first quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945); then quoting *Calder v. Jones*, 465 U.S. 783, 787 & n.6 (1984)). These tests, though similar, "have distinct requirements," and courts assess specific jurisdiction under both. *See id.* at 189.

A

The traditional test has three elements. First, the plaintiff must show that the defendant has "minimum contacts" with the forum such that it "purposefully avail[ed] itself of the privilege of conducting activities within the forum" and "invok[ed] the benefits and protections of [the forum's] laws." *Id.* at 186 (alterations in original) (quoting *Asahi Metal Indus. Co. v. Superior Ct. of Calif.*, 480 U.S. 102, 109 (1987)). Second, the plaintiff's claims "must 'arise out of or relate to' at least some of the defendant's contacts," "evidencing a strong relationship among the defendant, the forum, and the litigation." *Id.* (quoting *Ford Motor*, 592 U.S. at 365). And third,

4

exercising jurisdiction over the defendant must "comport[] with traditional notions of fair play and substantial justice" such that "the defendant 'should reasonably anticipate being haled into court' in that forum." *Id.* (alteration in original) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

1

Parker alleges a laundry list of contacts between Barclays and Pennsylvania, including that:

- "Barclays generates substantial profits from Pennsylvania consumers." (Am. Compl. ¶ 11.)

- "Barclays knows about its Pennsylvania consumer base, conducts its regular business in Pennsylvania, contacts Pennsylvania residents, interacts with them as an intermediary for merchants within its payments network, installs its software onto their devises in Pennsylvania, and continues to track their activities from there." (*Id.*)

- Parker "applied for a credit card using Barclays' website from Pennsylvania." (*Id.*)

- "Barclays knew that [Parker] resided in Pennsylvania when he applied for a credit card from Pennsylvania." (*Id.*)

- "Barclays planned to perform part of its obligations under the credit card in Pennsylvania." (*Id.*)

- "Barclays communicated its rejection of [Parker's] credit card application to [him] in Pennsylvania." (*Id.*)

- Barclays "shared" with third parties Parker's information "from his computer in Pennsylvania." (*Id.*)

- Barclays "used" Parker's financial information "to target [him] with ads in Pennsylvania." (*Id.*)

Most of these purported contacts fail outright. For example, Parker conclusorily alleges that Barclays "targets Pennsylvania consumers" for their personal or financial information. (Am. Compl. ¶ 11.) Parker also cannot establish minimum contacts by

5

applying for Barclays's products, browsing its website, interacting with its payment network and receiving emails related to a credit inquiry, *see* (*Id.*), because the test turns on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Moreover, operating an interactive website accessible nationwide or sending emails to Pennsylvanians doesn't render Barclays subject to jurisdiction here.[1] *See Hasson*, 114 F.4th at 194; *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454–55 (3d Cir. 2003).

Parker's remaining allegations boil down to Barclays conducting business in Pennsylvania and deploying cookies to Parker's computer in Pennsylvania. Barclays purposefully availed itself of Pennsylvania's laws by conducting business here. *See Hasson*, 114 F.4th at 193 (finding minimum contacts based on, among other things, an allegation that Papa Johns "conducts business with [Pennsylvania] residents"). As for Barclays's use of cookies, courts diverge on when to assess that question in the specific jurisdiction analysis.[2] Although it is unclear that deploying cookies to a computer

---

[1]  In any event, Parker never claims that Barclays sent him emails. Parker alleges that he "received email in Pennsylvania related to credit inquiries" Barclays ran, *see* (Am. Compl. ¶ 11), but he never specifies who sent those emails. Parker also alleges Barclays "invited" him to apply for its products, *see* (*Id.*), without detailing how Barclays did so. *Cf. Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 321 (5th Cir. 2021) (finding no specific jurisdiction because plaintiffs failed to show that the defendant "reached beyond the site to attract Texans to it" or "solicited Texan visits").

[2]  Some courts analyze and dismiss similar claims as Parker's under purposeful availment. *See, e.g.*, *Ingrao v. AddShoppers, Inc.*, No. 24-1022, 2024 WL 4892514, at *11 (E.D. Pa. Nov. 25, 2024). Others do so under relatedness. *See, e.g.*, *Schnur v. Papa John's Int'l, Inc.*, No. 22-cv-1620, 2023 WL 5529775, at *5 (E.D. Pa. Aug. 28, 2023), *aff'd Hasson*, 114 F.4th 181; *Alves v. Goodyear Tire & Rubber Co.*, 683 F. Supp. 3d 111, 117 (D. Mass. 2023); *Rosenthal v. Bloomingdale's, Inc.*, 686 F. Supp. 3d 36, 39 (D. Mass. 2023). The rest say little on the question and instead assess whether the defendant's business activity strongly relates to the plaintiff's claims. *See, e.g.*, *Hasson*, 114 F.4th at 193–95; *Delong v. PHE, Inc.*, No. 24-5212, 2025 WL 2447787, at *1, *9 (E.D. Pa. Aug. 25, 2025); *Perkins v. Goodyear Tire & Rubber Co.*, No. 22-1521, 2025 WL 81568, at *1, *5 (W.D. Pa. Jan. 13, 2025).

establishes minimum contacts with the forum where that computer happens to be, the Court considers this issue under relatedness.

2

"Relatedness" requires that Parker's claims "arise out of or relate to" Barclays's contacts with Pennsylvania. *Hasson*, 114 F.4th at 193 (citing *Ford Motor*, 592 U.S. at 364). In other words, Parker must show a "strong relationship" among Barclays, Pennsylvania and the deployment of Adobe Tracking Pixels on Barclays's website. *See id.*

Barclays's business activity in Pennsylvania has little to do with Parker's claims. In *Hasson*, a Pennsylvania resident sued Papa Johns, alleging it—like Barclays—deployed tracking technology to his device, monitored his interactions with its website and shared his information with third-party vendors. *Id.* at 185; *see* (Am. Compl. ¶¶ 7, 20). To show relatedness, the plaintiff pointed to Papa Johns's business activity in the Commonwealth, such as operating "85 brick-and-mortar locations in Pennsylvania," conducting regular "business with [Pennsylvania] residents" and "regularly market[ing] and advertis[ing] its goods and services." *Hasson*, 114 F.4th at 193 (quoting *Toys*, 318 F.3d at 452). But these "considerable contacts" didn't relate to the focal point of the litigation: Papa Johns's website. *See id.* at 193–94. None of Papa Johns's advertisements or commercials in Pennsylvania promoted its website, and operating stores in Pennsylvania had nothing to do with monitoring customers' online activity. *See id.*; *see also Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021) (dismissing a misappropriation claim that lacked a "strong connection" to the defendants' advertising and sales in Pennsylvania); *Delong*, 2025 WL 2447787, at *9 (dismissing a wiretapping

claim that lacked a strong relationship to the defendant's business activity here); *Perkins*, 2025 WL 81568, at *5 (W.D. Pa. Jan. 13, 2025) (same).  Similarly here, Barclays's business or profits don't strongly relate to its purported digital monitoring of Parker's device, nor has Parker pled any facts suggesting that Barclays advertises or markets its website in Pennsylvania.

Barclays's use of Adobe Tracking Pixels is insufficient for a different reason: It lacks a strong relationship to Pennsylvania.  Parker alleges Barclays procured Pixels from Adobe, integrated them into its website, and configured them to transmit data to third parties.  *See* (Am. Compl. ¶¶ 29–33, 66, 105).  Nowhere does Parker allege any of that happened in Pennsylvania.  Nor is it clear that Barclays deploys Pixels on its website from Pennsylvania.  When visiting https://cards.barclayscardus.com/, a person's web browser[3] "exchanges communications" with the computer server hosting Barclays's website.  *See* (*Id.* ¶ 14–16).  From these communications, Barclays's computer server purportedly deploys Pixels to an accessing user's web browser, causing the web browser to send data to third parties like Adobe.  *See* (*Id.* ¶¶ 15–17, 22).  But Parker never alleges where Barclays or Adobe operates their servers, though Barclays's principal place of business is in Delaware.  *See* (*Id.* ¶ 12).  Without this information, the Court cannot conclude Barclays deployed Pixels from Pennsylvania.  *See Schnur*, 2023 WL 5529775, at *5, *aff'd Hasson*, 114 F.4th 181 (finding it "reasonable to infer" that Papa Johns deployed its tracking technology outside of Pennsylvania given that it "is a Delaware corporation with its principal place of business in Georgia"); *see also Alves*, 683 F. Supp. 3d at 117 (finding the same in a Massachusetts suit against Goodyear).

---

3       According to Parker, "[w]eb browsers are software applications that allow consumers to exchange electronic communications over the Internet."  (Am. Compl. ¶ 14.)

Parker reframes the issue, focusing on where Barclays deployed Pixels—that is, to his computer in Pennsylvania. *See* (Pl.'s Opp'n to Mot. at 12–15). In doing so, Parker characterizes Barclays's conduct as something akin to a physical entry into Pennsylvania. *Hasson* cautioned against this very conclusion. "[I]ntentional torts . . . committed via the Internet or other electronic means present very different questions [of] whether and how a defendant's virtual presence and conduct translate into contacts with a particular State." *Hasson*, 114 F.4th at 191 (alteration in original) (citation modified) (quoting *Walden*, 571 U.S. at 290 n.9). Given this concern, the Court "decline[s] to hold that [Barclays's] use of [Adobe Tracking Pixels] constitutes a physical entry into Pennsylvania sufficient to support the exercise of jurisdiction."[4] *Id.*

To the extent Barclays did anything in Pennsylvania with Parker's device,[5] Parker generated those contacts. The only reason Barclays's website "interacted with a browser located in [Pennsylvania] is that [Parker] accessed the website in that state." *Alves*, 683 F. Supp. 3d at 117. And as Parker acknowledges, Barclays deploys tracking technology to a web browser "[w]hen a user accesses a website that has tracking technology." (Am. Compl. ¶ 20.) So by accessing https://cards.barclaycardus.com/, Parker triggered the deployment of cookies to his device and the alleged subsequent transmission of his data to third parties. But "[j]urisdiction is proper . . . where the

---

[4] *Hasson* reached this conclusion under its *Calder* analysis, *see* 114 F.4th at 190, but its conclusion was not limited to the effects test and applies as well to Parker's argument under the traditional test.

[5] Although not a personal jurisdiction case, the Third Circuit recently held "that the place of interception is the point at which the signals were routed to [the defendant's] servers." *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 132 (3d Cir. 2022). Parker alleges that point was in Pennsylvania, his computer's location. *See* (Am. Compl. ¶¶ 11, 15–16, 19).

9

contacts proximately result from actions by the defendant *himself*"—not those created by the plaintiff. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Still, Parker argues his claims "'arise out of' Barclays's contact with his device . . . and 'relate to' Barclays's Pennsylvania contacts, because [he] alleges the kind of injury that would 'tend to be caused' by Barclays's contacts with Pennsylvania consumers." (Pl.'s Opp'n to Mot. at 12.)  That argument is doubly wrong.  First, it incorrectly centers on Barclays's contacts with Parker's device, not with Pennsylvania. *See Walden*, 571 U.S. at 285–86.  Second, it misrepresents the relatedness test.  The Third Circuit has never required that relatedness turn on the plaintiff alleging a kind of injury that would "tend to be caused" by the defendant's contacts with the forum, nor does Parker cite his source for that proposition, though it appears to come from a recent Ninth Circuit case, *see Briskin v. Shopify*, 135 F.4th 739, 760 (9th Cir. 2025) (quoting *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 505 (9th Cir. 2023)), which Parker has copied and pasted with minor adjustments into his brief, *see* (Pl.'s Opp'n to Mot. at 12).

Parker invokes *Briskin* repeatedly.  *See* (*Id.* at 12–16).  Although the reasoning of sister courts can be persuasive, *see Reilly v. City of Atlantic City*, 532 F.3d 216, 229 (3d Cir. 2008), Third Circuit law binds this Court, *see Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 276 n.50 (3d Cir. 2009).  And, as relevant here, the law is this Circuit differs importantly from Ninth Circuit law.  *Compare Hasson*, 114 F.4th at 193 (requiring the plaintiff to "evidenc[e] a strong relationship among the defendant, the forum, and the litigation" and never mentioning the tend-to-be-caused requirement for relatedness), *and Hepp*, 14 F.4th at 208 (same), *with Briskin*, 135 F.4th at 750–761

(requiring the plaintiff's injuries "tend to be caused by" the defendant's forum contacts and never mentioning the strong-relationship requirement for relatedness).

Parker contends Barclays knew what it was doing all along, claiming "Barclays had information in its possession showing that [he] was in Pennsylvania," and so "Barclays knew *prior to deploying cookies that Plaintiff resided in Pennsylvania*." (Pl.'s Opp'n to Mot. at 13–14.) The defendant's knowledge of the plaintiff's location matters for the effects test, not for the traditional test. *See Hasson*, 114 F.4th at 192. Additionally, knowing where Parker's computer happens to be doesn't establish minimum contacts with Pennsylvania, let alone strengthen the relationship between Barclays and Pennsylvania. *See, e.g.*, *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 28 (1st Cir. 2008) ("We have held, however, in a variety of contexts, that the defendant's awareness of the location of the plaintiff is not, on its own, enough to create personal jurisdiction over a defendant.").

Parker next tries to distinguish *Hasson*, which he contends involved "the delivery of functional code," whereas Barclays here "install[ed] . . . *files* on [Parker's] computer" through "*advertising technology*." (Pl.'s Opp'n to Mot. at 14–15.) But Parker never explains how this distinction purportedly makes a difference. If anything, Papa Johns amassed more data on consumer's online activities than Barclays. Papa Johns harvested "virtually every user interaction, including all mouse movements, clicks, scrolls, zooms, window resizes, keystrokes, text entry, and numerous other forms of a user's navigation and interaction through the website." *See Hasson*, 114 F.4th at 185 (citation modified). Parker does not allege Barclays did any of that. *See* (Am. Compl.

¶¶ 4, 17, 30–31). So Barclays's conduct isn't, as Parker insists, "significantly more than" and "readily distinguishable from" *Hasson*. (Pl.'s Opp'n to Mot. at 14–15.)

Parker lastly points to *Hasson* being a "close call," *see* 114 F.4th at 193. This case, however, is not. The Third Circuit noted the closeness of *Hasson* in the context of "Papa Johns' considerable contacts in Pennsylvania." *Id.* That mattered because "[t]he degree of relatedness required in a given case is inversely proportional to the overall intensity of the defendant's forum contacts." *Id.* (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007)). Unlike *Hasson*, Barclays's Pennsylvania contacts aren't considerable. Parker never alleges how many banks Barclays operates in Pennsylvania, nor if it ran any commercials in Pennsylvania. *Cf. id.* at 193–94 (operating 85 brick-and-mortar locations and running a commercial it ran during the Philadelphia Eagles's Super Bowl game).[6]

### B

The *Calder* "effects" test applies to "an intentional tortfeasor whose 'contacts with the forum . . . otherwise [do] not satisfy the requirements of due process' under the traditional test." *Hasson*, 114 F.4th at 187 (alteration in original) (citation modified) (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3d Cir. 1998)). The effects test "require[s] that the tortious actions of the defendant have a forum-directed purpose," a standard "*more demanding*" than the "*relatedness requirement of the effects test.*" *Id.* at 189 (alteration in original) (quoting *Miller Yacht*, 384 F.3d at 99). Specifically, a plaintiff must "plead facts establishing that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum; and (3) the

---

[6] Because Parker doesn't establish relatedness, the Court need not consider whether the third element of the traditional test is satisfied. *See, e.g.*, *Hasson*, 114 F.4th at 194–95, 197.

defendant expressly aimed his tortious conduct at the forum." *Id.* at 187 (citing *Remick v. Manfredy*, 238 F.3d 248, 258 (3d Cir. 2001)).

"Only if the 'expressly aimed' element of the effects test is met need we consider the other two elements." *Marten*, 499 F.3d at 297.  For that, the defendant's website must be "targeted at a particular jurisdiction." *Hasson*, 114 F.4th at 190 (quoting *Toys*, 318 F.3d at 452).  A "defendant does not expressly target a forum merely by operating a website that is accessible there—even when the plaintiff alleges harm in that forum arising out of his engagement with that website." *Id.*

Parker alleges Barclays targeted Pennsylvania because it knew Parker was in Pennsylvania and "aimed to place cookies on Plaintiff's computer in Pennsylvania . . . and facilitate targeting Plaintiff with advertising in Pennsylvania." (Pl.'s Opp'n to Mot. at 15 (citing Am. Compl. ¶ 11).)  Parker reiterates conclusory allegations that Barclays "target[ed] him with advertising," "falsely disclaim[ed] [its] use of personal information for advertising to Pennsylvania," and acted "unlawful[ly]" under the Gramm-Leach-Bliley Act.  (*Id.* at 15–16 (citing Am. Compl. ¶¶ 11, 13, 41).)  Parker contends this case is "unique" because "federal regulations make [Barclays's] exact conduct unlawful as to financial information." (*Id.* at 16.)  But the effects test has never turned on conclusory allegations that the defendant violated federal regulations.  Parker finally points to his application for a Barclays credit card in Pennsylvania and Barclays running a credit check on him, *see* (*Id.*), but "jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct *by the defendant* that creates the necessary contacts with the forum, not the unilateral activity of a plaintiff." *Hasson*, 114 F.4th at 196 (citation modified) (quoting *Walden*, 571 U.S. at 286).

13

*Hasson* again is instructive. Much like the plaintiff's allegations there, none of those here show that Barclays's "website is accessible only in Pennsylvania, that [it] deploys [Adobe Tracking Pixels] only to users who access the site while in Pennsylvania, or that the website tailors its content in any meaningful way to Pennsylvanians." *Id.* at 190; *see also Delong*, 2025 WL 2447787, at *9 (dismissing for similar reasons); *Ingrao*, 2024 WL 4892514, at *3 (same). In fact, Parker seems to concede that Barclays uses cookies indiscriminately given that he seeks certification of a "[n]ationwide [c]lass" that has "millions of members . . . throughout the United States." (Am. Compl. ¶¶ 47, 50.) Barclays's website deploys Pixels to a person's web browser regardless of that person being from Pennsylvania, the other forty-nine states, or anywhere else in the world.

Parker tries to differentiate *Hasson* because, unlike that case, Parker alleges Barclays knew where he was located based on prior communications between his web browser and the server hosting Barclays's website. *See* (Pl.'s Opp'n to Mot. at 15–16 (citing Am. Compl. ¶ 19)). But "knowledge . . . alone is insufficient to satisfy the targeting prong of the effects test." *Hasson*, 114 F.4th at 196 (citation modified) (quoting *IMO Indus.*, 155 F.3d at 266). And Barclays learned about Parker's device only after he visited https://cards.barclaycardus.com/, which is when Barclays "contemporaneously" deployed Pixels to his device. *See* (Am. Compl. ¶¶ 18–20, 22). As in *Hasson*, Parker fails to establish that Barclays "knew that [he]—or any other user— was in Pennsylvania *before* [Adobe Tracking Pixels] w[ere] dispatched to his browser." 114 F.4th at 196. Even if Parker plausibly alleged that Barclays knew from geolocation data where its customers happened to be, that sort of "post hoc discovery . . . does not

14

establish that the company 'targeted (or 'expressly aimed' [its] conduct at) the forum.'" *Id.* (alteration in original) (quoting *IMO Indus.*, 155 F.3d at 263).

IV

Although Parker has not requested jurisdictional discovery, "the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging [his] burden" "[w]here the plaintiff's claim is not clearly frivolous." *Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357, 362 (3d Cir. 1983); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978) ("[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues."). Courts should permit jurisdictional discovery "[i]f a plaintiff presents allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between the party and the forum state.'" *Toys*, 318 F.3d at 456 (citation modified) (quoting *Mellon Bank*, 960 F.2d at 1223).

Parker has not identified specific facts that jurisdictional discovery would uncover to support the exercise of personal jurisdiction. The Court has already concluded that Parker has not pled personal jurisdiction with reasonable particularity. And using Adobe Tracking Pixels on Barclays's website and capturing Parker's interactions with it "are activities with no connection to Pennsylvania, and no amount of discovery can change that." *See Schnur*, 2023 WL 5529775, at *6, *aff'd Hasson* 114 F.4th 181.

And amendment would be futile because "[t]he only connection between [Barclays], the forum, and the deployment of [Adobe Tracking Pixels] is that [Parker]

15

happened to access [Barclays's] website while in Pennsylvania; he could just as easily have done so in another forum, and his complaint would not change." *See id.*, at *7.

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.